THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIAM ESPOSITO and ANTHONY ESPOSITO, Appellants.

Argued November 27, 1941; decided January 22, 1942.

*Francis L. Valente, Irving J. Tell* and *Morris Dickman* for appellants. The defendants were compelled to stand trial without proper preliminary inquiry as to their sanity and as to their ability to understand the proceedings and make their defense. (*Freeman* v. *People*, 4 Den. 9; *People* v. *McElvaine*, 125 N. Y. 596; *Youtsey* v. *United States*, 97 Fed. Rep. 937; *United States* v. *Chisholm*, 149 Fed. Rep. 284; *People* v. *Bogdanoff*, 254 N. Y. 16; *People* v. *Glen*, 173 N. Y. 395; *Simon* v. *Craft*, 182 U. S. 427; *People ex rel. Barone* v. *Fox*, 144 App. Div. 611; 202 N. Y. 616; *Stuart* v. *Palmer*, 74 N. Y. 183; *Rosalsky* v. *State*, 254 N. Y. 117.) The defendants' constitutional immunities were violated by their injection with narcotic and paralyzing drugs and by the opinion evidence furnished by the People's expert being based in part on the reactions of the defendants while subject to the drugs and information obtained from them while under the influence thereof. (*Matter of Doyle*, 257 N. Y. 244; *Matter of Grae*, 282 N. Y. 428; *People* v. *Truck*, 170 N. Y. 203; *People* v. *Nino*, 149 N. Y. 317; *People* v. *Furlong*, 187 N. Y. 198; *People* v. *Austin*, 199 N. Y. 446; *People* v. *Kemmler*, 119 N. Y. 580; *People* v. *Sliney*, 137 N. Y. 570; *People* v. *Hoch*, 150 N. Y. 291.)

*Thomas E. Dewey, District Attorney* (*Stanley H. Fuld, Joseph A. Sarafite* and *Eugene A. Leiman* of counsel), for respondent. The defendants' mental responsibility and guilt were established beyond a reasonable doubt. (*People* v. *McElvaine*, 125 N. Y. 596.) There was ample proof that the defendants were capable of understanding the proceedings and of making their defense. (*People* v. *McElvaine*, 125 N. Y. 596; *People* v. *Rhinelander*, 2 N. Y. Cr. Rep. 335; *Freeman* v. *People*, 4 Den. 24; *People* v. *Hoch*, 150 N. Y. 291.) The procedure adopted by the court for determining the question of sanity at the time of the trial was proper; the defendants were not deprived of due process or prejudiced in any way. (*People* v. *Tobin*, 176 N. Y. 278; *People* v. *McElvaine*, 125 N. Y. 596; *Freeman* v. *People*, 4 Den. 9; *People* v. *Rhinelander*, 2 N. Y. Cr. Rep. 335;

*United States* v. *Harriman,* 4 Fed. Supp. 186; *People* v. *Pershaec,* 172 Misc. Rep. 324; *People* v. *Whitman,* 149 Misc. Rep. 159; *People* v. *Goldstein,* 285 N. Y. 376; *Nobles* v. *Georgia,* 168 U. S. 398.) There was no violation of the defendants' constitutional privilege against self-incrimination. (*People* v. *Defore,* 242 N. Y. 13; *People* v. *Gardner,* 144 N. Y. 119; *People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219; *People* v. *Furlong,* 187 N. Y. 198; *State* v. *Nelson,* 162 Ore. 430; *State* v. *Coleman,* 96 W. Va. 544; *Johnson* v. *Comm.,* 115 Penn. St. 369.)

CONWAY, J. The defendants were convicted of murder in the first degree, and sentenced to be executed, after a trial in the Court of General Sessions in New York County. They had pleaded not guilty with a specification of insanity pursuant to section 336 of the Code of Criminal Procedure, and it was contended on their behalf that they were legally insane at the time of the commission of the crime and at the time of arraignment and trial.

On the 14th day of January, 1941, Alfred Klausman, the deceased, was employed at No. 6 East Thirty-fourth street, Manhattan, New York city, and on that day collected his employer's payroll from a local bank. He returned with it to his place of employment and signaled for the elevator. He entered it, followed by the defendants. Those three and the operator were the sole occupants. As the elevator was ascending, and between the second and third floors, Klausman refused to accede to the request of the defendants that he yield possession of the payroll money. He was shot through the head and the money taken from him. He died. The operator was then ordered to return to the street floor where the defendants left the elevator after ordering the operator to ascend with the car.

The defendants entered Thirty-fourth street. An employee of a firm on the second floor in the building shouted an alarm from a window facing Thirty-fourth street. The defendants ran across that street and entered a department store, pursued by police officers, store

employees and civilians. They emerged on another street and entered a taxicab which was unable to progress because of blocked traffic. They then left the taxicab and ran around a corner into Thirty-fifth street, closely·pursued by police and civilians. They exchanged shots with the police and the defendant William Esposito was shot down. The defendant Anthony Esposito was captured. The policeman guarding William was killed by him by means of a revolver concealed on his person and a bystander who attempted to aid the police was also shot by William. The defendants were armed with six guns. They also possessed a length of rope, a knife and additional ammunition.

The facts clearly sustained the finding of the jury that the defendants were not legally insane at the time of the commission of the crime. In fact, appellants' brief states that the appeal is " directed primarily to questions of law rather than questions of fact " and counsel stated to the jury: " We concede everything, but we say that they are insane."

Two claimed errors require consideration. The defendant Anthony Esposito moved for the granting of an order " pursuant to the provisions of Chapter V of the Code of Criminal Procedure as amended by the laws of 1939 [ch. 861], directing that the said defendant be examined to determine the question of his sanity; " and for other and further relief. Both defendants later moved for the granting of an order permitting the employment of two psychiatrists to testify on their behalf at the expense of the county. On the argument of the latter motion the court pointed out that under the provisions of section 308 of the Code of Criminal Procedure it was necessary for the defendants to submit some evidence showing the necessity for the appointment of psychiatrists. Following the making of each motion an order was entered. The orders were identical in form. Each provided for commitment " for a reasonable period for treatment, observation, examination and report * * *."

The Court of General Sessions has inaugurated the practice, in the discretion of the judge in the particular case, of entering an order for treatment, observation and

examination of an indicted defendant and of obtaining a report thereon for the purpose of determining preliminarily whether " there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense," under section 658 of the Code of Criminal Procedure and section 1120 of the Penal Law. If that preliminary order and the examination and observation thereunder results in a report which satisfies the court that the defendant should be examined to determine the question of his sanity, an order is entered for the formal examination provided for in sections 658–660 of the Code of Criminal Procedure. That latter order directs that the defendant " be formally examined in accordance with the provisions of the Code * * * to determine the question of his sanity, * * *." (See *People* v. *Pershaec*, 172 Misc. Rep. 324, 338.)

Regardless of the specific purposes outlined in the papers submitted upon the motions made, both sets of motion papers were based upon alleged insanity and it was, therefore, clearly within the discretion of the court to commit the defendants for examination and observation prior to the entry of an order which would set in motion a statutory proceeding under sections 658 *et seq.* of the Code of Criminal Procedure. When the report of the examination and observation disclosed that the defendants were sane but were malingering, the trial court was justified in finding that there was no " reasonable ground for believing " the defendants' assertions of insanity and in ordering them to proceed to trial. Thus no order provided for under sections 658 *et seq.* of the Code of Criminal Procedure was made.

The question then arises whether the court was free to select the method employed in order to determine the question of defendants' insanity at the time of arraignment and trial. Section 1120 of the Penal Law provides: " * * * A person can not be tried, sentenced to any punishment or punished for a crime while he is in a state

of idiocy, imbecility, lunacy or insanity so as to be incapable of understanding the proceeding or making his defense. * * * " The defendants claim that they were entitled to representation and to call witnesses upon the examination and observation ordered and to contest the report thereon. In this we think the defendants are in error. This court, speaking through Chief Judge RUGER upon this subject in *People* v. *McElvaine* (125 N. Y. 596, 608), said: " We do not think the Code of Criminal Procedure has made any radical change in the mode of procedure or the character of the proceedings. The duty of making the examination referred to is now imposed upon the court before whom the indictment is pending, and it would be responsible for any violation of the law in respect to trying or punishing insane criminals permitted by it. It is only when the necessity of such an examination is sufficiently *made to appear* to the court in which the indictment is pending, that it is bound to order an examination; but it would be the plain duty of a court, when the subject is brought to its attention by responsible parties, to itself make a sufficient inspection and examination to determine whether the application is made in good faith and upon plausible grounds, and the apparent facts thus discovered are made the condition of the right of the court to institute the statutory inquisition. Such an examination, we infer, the court made in this case. * * * We think the motion rested in the discretion of the court, and it was justified in denying it. It is certainly a startling proposition to think that a prisoner can, at his pleasure, arrest the regular and orderly administration of criminal law by raising collateral issues indefinitely, and thus delay, and, perhaps, defeat a trial under an indictment. The law has made ample provision for the protection of all a prisoner's rights, but it does not put it in his power to paralyze the administration of justice. The question of his sanity at the time of the commission of the offense is always open for trial under a plea of not guilty, and we have referred to the provisions which protect him from trial, conviction or

punishment if he becomes insane while in confinement. So far from having a right to compel an examination into the question of present insanity, he is permitted to take part in such examination, if ordered, only by the express provision of the statute. It is plainly inferable from this permission that it was supposed without it the examination must be conducted by the officers charged with the duty of making it alone."

To the same effect are *People* v. *Tobin* (176 N. Y. 278, 284); *Freeman* v. *People* (4 Den. 9, 20); *People* v. *Rhinelander* (2 N. Y. Crim. Rep. 335). (See, also, *United States* v. *Harriman*, 4 Fed. Supp. 186, 187.)

It is true that defendants were not permitted to take part by representation of counsel during the examination and observation directed and that they were not afforded an opportunity to contest the findings of the examiners upon that examination and observation. Where sanity is found, however, even under a proceeding under sections 658 *et seq.* of the Code of Criminal Procedure, the defendants have ample opportunity to furnish the court with evidence bearing upon their then mental condition at any time before final judgment, and of course that right continues under section 1120 of the Penal Law and sections 495a–499 of the Code of Criminal Procedure, following a preliminary examination, observation and report under the procedure employed here. Moreover, on the trial the defendants were entitled to show their then mental condition in order that such condition might be considered by the jury as evidencing their mental condition at the time of the commission of the crime charged. Defendants' three sisters, their two lawyers and two psychiatrists, called in their behalf, testified to their mental condition while in the Tombs awaiting trial. The trial court advised the jury that proof of insanity following the commission of the crime was relevant as bearing upon the issue of insanity at the time of the commission of the crime.

That advice was proper and in accord with settled legal principles. (*People* v. *Hoch*, 150 N. Y. 291, 303, 304.)

One of the psychiatrists called by the defendants acknowledged on cross-examination that he " could not say " that they were " now suffering from a psychosis."

The other question presented is the assertion of defendants that their constitutional immunities were violated (1) by their injection with narcotic and paralyzing drugs during the examination and observation of them at Bellevue Hospital; and (2) by the receipt during the trial of evidence furnished by one of the psychiatrists who testified on behalf of the People in so far as it was based on the reactions of the defendants while subject to the drugs and on information obtained from them while under drug influence.

1. The drugs used were metrazol and sodium amytal. There was evidence that those drugs are frequently used in psychiatric examinations. We have reached the conclusion after due consideration that the injection of those drugs and the receipt of the testimony violated no rights of the defendants under the circumstances presented by this record. The drugs were administered for the purpose of removing defendants' inhibitions because the doctors suspected that they were shamming and malingering. One doctor testified that the symptoms exhibited by the defendants did not fit into " any pattern that you know of, any form of psychosis " and that " they [the defendants] are not showing any symptoms of any known psychosis." It must be remembered that the orders for the examination and observation were based upon the defendants' claim that they should escape punishment by reason of their mental condition at the time of the commission of the acts charged or by reason of their condition at the time of arraignment and trial. Under those circumstances defendants may not both advance their claims and then seek to make the rules for the determination of those claims. Since they desired to present their claims that they were not legally responsible for their acts because of mental defect they were subject to the use of methods set up objectively by the medical profession for the proper determination of such claims. Courts, under the circumstances presented here,

may not control the methods which have been determined by the medical profession to be proper means for discovering or treating mental diseases.

2. As to the claimed violation of constitutional immunity from self-crimination, we do not pass upon the question whether testimony of the examining and observing psychiatrists was admissible to establish a confession of guilt or admissions evidencing guilt while the defendants were subject to the influence of the drugs which had been administered to them. We are not now prepared in view of the record presented here and of present medical knowledge and experimentation disclosed therein, to hold that such testimony is competent. The questions asked in this instance were quite evidently for the purpose, among others, of determining whether the defendants were capable of understanding the proceedings and of making their defense. Neither confessions of guilt nor admissions evidencing guilt were elicited. There was, therefore, no error committed.

The judgments of conviction should be affirmed.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur.

Judgments of conviction affirmed.