## LEYRA v. DENNO.

United States District Court
S. D. New York.
June 10, 1953.

Osmond K. Fraenkel and Frederick W. Scholem, New York City, for petitioner.

Nathaniel L. Goldstein, Atty. Gen., State of N. Y., by Vincent A. Marsicano, Asst. Atty. Gen., State of N. Y., Miles F. Mc-Donald, Dist. Atty., Kings Co., N. Y. and William I. Siegel, Asst. Dist. Atty., Brooklyn, N. Y., of counsel, for respondent.

RYAN, District Judge.

This petition for a writ of habeas corpus has been filed by Camilo Weston Leyra, who is presently confined in a New York State prison awaiting execution under a sentence of death pronounced against him in the County Court of Kings County, New York, after a jury verdict of guilty of Murder in the first degree, New York Penal Law, McK.Consol.Laws, c. 40, § 1044. Upon appeal to the New York Court of Appeals the judgment of conviction was affirmed: three judges concurred in the majority opinion; a fourth judge concurred in result invoking the provisions of Section 542 of the New York Code of Criminal Procedure, which permits that court on ap-

peal to give "judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties"; and two judges, dissenting, voted to reverse, People v. Leyra, 1952, 304 N.Y. 468, 108 N.E.2d 673. Thereafter, an application was made to the United States Supreme Court for a writ of certiorari to review the questions arising under the Constitution which the New York Court of Appeals certified were presented and necessarily passed upon, to wit: "whether the defendant was deprived of due process guaranteed by the Fifth and Fourteenth Amendments thereof in the admission into evidence of the confessions of the defendant and in the admission into evidence of the testimony given by defendant at a prior trial." This application was denied on March 16, 1953, 345 U.S. 918, 73 S.Ct. 730 and an application for rehearing was denied on April 27, 1953, 345 U.S. 946, 73 S.Ct. 835.

In the petition now before me the petitioner urges only the claim that the confessions were improperly received in evidence.

At a hearing held by me it appeared that no relevant facts were in dispute and no request was made that testimony be taken. I called for and received the case on appeal before the New York Court of Appeals (which contains a complete stenographic transcript of the trial), and the petition filed for a writ of certiorari.

■ From the record of the proceedings heretofore had, I conclude that the petitioner is not barred from making this application for he has "exhausted the remedies available in the courts of the State * * * by any available procedure". Section 2254, 28 U.S.C.A. I also conclude and am satisfied from the record before me that "the state process has given fair consideration to the issues * * *, and has resulted in a satisfactory conclusion." Brown v. Allen, 1953, 344 U.S. 443, 463, 73 S.Ct. 397, 410, 437. I find from the record that the federal constitutional rights of petitioner have been protected, that there has been no denial of due process, and I conclude that the petition should be denied.

It appears that a prior judgment of conviction of Murder in the first degree was reversed on appeal by the New York Court of Appeals. People v. Leyra, 1951, 302 N.Y. 353, 98 N.E.2d 553, and that the conviction under which petitioner is now imprisoned, was had on a second trial under the same indictment, which charged petitioner with the unlawful killing of his father and mother, on January 10, 1950. Reversing the conviction on the prior trial and ordering a new trial that Court found that

"The verdict rests largely upon alleged confessions of the defendant. If they were properly received in evidence, followed by proper instructions from the court, the verdict would be clearly warranted, and we could not interfere with the execution of sentence for these brutal crimes. The conclusion is inescapable, however, that grave and prejudicial errors were committed with respect to these alleged confessions, so fundamental in nature as to require a reversal and a new trial." 302 N.Y. at page 356–357, 98 N.E.2d at page 554.

The evidence offered on the prior trial concerning these confessions and the circumstances under which they were made is analyzed and meticulously stated in this opinion in which all the judges of this appellate court of last resort in New York State concurred.

Testimony was given as to statements made to a physician and psychiatrist, Dr. Max Helfand, beginning at about 5:30 p. m. on January 13, 1950, and as to later statements made to John J. Meenahan, a captain of the New York City Police Department, to William Herrschaft, an employee of petitioner's deceased father, who had known petitioner for about 10 years, and to two assistants in the office of the District Attorney of Kings County, New York.

The court noted of Dr. Helfand that, 302 N.Y. at page 359, 98 N.E.2d at page 556:

"This doctor, unconnected with the police department or the prosecutor's office, had been called to the police station by the District Attorney, who

outlined the case to him. The doctor had also been 'briefed' by Captain Meenahan, as is manifest from the questions he asked. He agreed to talk to defendant upon condition that there be no one else in the room; he knew, however, that the room was wired and that the interview would be electrically recorded by a recording machine, which was specially set up that day. The police and the District Attorney were in the basement of the police station, where they overheard the entire interview and permitted it to continue uninterruptedly.

"The doctor spent an hour or an hour and a half with defendant. A transcript of the recorded interview shows that he told defendant at the outset: 'I'll tell you what the purpose of my talk to you is. I want to see if I can help you.' To this defendant answered: 'Yes, Doctor.' The doctor asked him about his sinus condition and the treatment he had had, and in the course of the interview said: 'I'm your doctor.' "

The court later in its opinion stated, 302 N.Y. at page 363, 98 N.E.2d at page 558:

"* * * this court is unwilling to assent to the doctrine that representatives of the State may thus employ a relationship they established between the doctor and this defendant, which is of a character that our public policy holds privileged, Civil Practice Act, § 352, in order to obtain a confession out of defendant's own mouth without warning and under the circumstances here disclosed. People v. Fernandez, supra [301 N.Y. 302, 93 N.E.2d 859]; People v. Esposito, supra [287 N.Y. 389, 39 N.E.2d 925, 142 A.L.R. 956]; People v. Furlong, 187 N.Y. 198, 212, 79 N.E. 978."

The court with reference to the other statements of petitioner wrote, 301 N.Y. at page 365, 98 N.E.2d at page 560:

"Whether the coercion which we find implicit in defendant's statement to the doctor extended over and into the later confessions to Meenahan, Herrschaft and the assistant district attorneys remains a question of fact for determination by the jury * * *. These confessions should have been separately considered in the light of the coercion existing at the time of defendant's statement to the psychiatrist, and only if the jury were satisfied beyond a reasonable doubt that such coercion had ceased to influence defendant could they consider the later confessions. Only thus would due process of law be accorded defendant."

The court also noted that it was contended on behalf of petitioner that his statement had been induced by promises of leniency; as to this it wrote, 301 N.Y. at page 366, 98 N.E.2d at page 560:

"Moreover, here again the jury should have been instructed to consider separately the later confessions, in the light of any promise that may have been made during defendant's statement to the doctor. Lyons v. Oklahoma, supra [322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481]."

It is not in dispute that substantially the same evidence was presented on both trials as to the circumstances surrounding the making of the statements by the petitioner. It was upon this same proof that the New York Court of Appeals unanimously held, on the first appeal, that the submission of the voluntary character of these statements would result in a denial of due process only as to the statement made to Dr. Helfand. The trial judge on the second trial so ruled. The judges, dissenting from affirmance on the second appeal to the Court of Appeals, did not depart from their holding on the prior appeal that the voluntary nature of the other statements should be submitted as a factual issue to the jury for its determination and not excluded by the court as a matter of law. The two dissenting judges stated that they had concluded that the conviction should be reversed because the trial judge had "charged unequivocally that Dr. Helfand had promised defendant, 'in order to induce him to confess,' that he would not be prosecuted for murder in the first degree, that such promise was authorized by the district attorney and that

560

defendant confessed in reliance upon it. Consequently, as the trial court went on to charge, that confession was inadmissible as a matter of law. See Code Crim.Proc., § 395." People v. Leyra, 1952, 304 N.Y. 468, 473, 108 N.E.2d 673, 674. It was by the application of local law—the provisions of the New York Code of Criminal Procedure—that the dissenting judges concluded that the trial court's ruling "became the law of the case" and "that any and all other confessions to the district attorney or those associated with him in the investigation and prosecution of this very homicide, must also be deemed to have been induced by that promise, and likewise inadmissible." That they were led to that conclusion by considerations of local law and not by a holding that constitutional rights of due process had been denied is manifest by the statement that "other considerations, considerations separate and apart from the district attorney's promise, may have prompted defendant to confess to his friend. I am willing to assume, therefore, that the court was warranted in leaving to the jury the question whether or not the promise induced defendant's confession to Herrschaft * * *." 304 N.Y. at page 473, 108 N.E.2d at page 675.

The local law applicable to the admission in evidence of a confession of a defendant, Sec. 395, N.Y.C.C.P., provides:

> "A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor * * *."

As I read these opinions I find none of the judges of the New York Court of Appeals holding that the submission to the jury of the question of the voluntary character of any of petitioner's subsequent statements was in violation of due process.

The ruling of the majority of the New York Court of Appeals on matters of local law and of state concern I am required to accept; of course, I do so without hesitation and irrespective of my personal opinion. However, it is for this district court to determine whether the petitioner has been accorded due process or whether he has been denied rights guaranteed by the United States Constitution, Brown v. Allen, supra, 344 U.S. at page 488, 73 S.Ct. 437, Frankfurter, J., and as to these federally created rights "State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding." 344 U.S. at page 506, 73 S.Ct. at page 446. This congressional grant of jurisdiction under the Supremacy Clause of the Constitution "merely expresses the choice of Congress how the superior authority of federal law should be asserted." 344 U.S. at page 510, 73 S.Ct. at page 448.

I approach the task with "an alert deference to the judgment of the state court". Malinski v. People of State of New York, 1945, 324 U.S. 401, 417, 65 S.Ct. 781, 789, 89 L.Ed. 1029.

Petitioner contends in this petition that he was deprived of his constitutional right of due process by reason of the fact (1) that the New York Court of Appeals erred in affirming his conviction in that it was founded upon evidence of confessions obtained by means of mental coercion, duress and promises of immunity; and (2) that the subsequent confessions were so close in point of time and circumstances to the first coerced confession that they also should have been ruled inadmissible.

It was with the applicable local law established by the Court of Appeals that the indictment was moved for the second trial. At this trial, testimony was again received of the statement of petitioner to Dr. Helfand but " 'merely on the question as to whether or not whatever statements the defendant made * * * were inspired' by Dr. Helfand, an issue raised by defense counsel. This was received after the trial court had cautioned counsel at length, followed by a most explicit and detailed instruction to the jury as to its illegality phrased in most simple and understandable language that they might not consider it on the issue of guilt under 'any circumstances', but were limited to a consideration of its effect on the later confessions, and

that these too were to be entirely disregarded if found to be dependent upon it in any respect whatsoever, a distinction which each individual juror signified that he understood." People v. Leyra, 304 N.Y. 468, 471, 108 N.E.2d 673. At this trial, testimony was also received of the statements of the petitioner to Captain Meenahan, to Herrschaft and to two assistant district attorneys.

When the transcript of the statement of petitioner to Dr. Helfand was received in evidence on the second trial the trial judge at the time instructed the jury (case on appeal, p. 559, folio 1676–1677):

"You must not consider any of the matters read by the District Attorney by way of questions and answers, upon the guilt of this defendant. It is not to be considered in that regard in any shape, form or manner. The sole question is here, what does this statement indicate as to whether the doctor suggested certain things to the defendant; in other words, put it in his mind or in his mouth, as affecting some other statements he allegedly made later to some other people. In other words, did the doctor suggest certain details, which the defendant later employed in giving an alleged account of what transpired when he spoke to Meenahan, Herrschaft and the Assistant District Attorneys."

The record shows that the trial began on December 10, 1951 and was concluded on December 21, 1951; the transcript of petitioner's statement to Dr. Helfand was received in evidence on December 19, 1951. At the close of the court session on December 11, 1951 the trial judge in the absence of the jury made the following statement on the record, without objection from petitioner's attorneys (case on appeal, p. 163, folio 487–489):

"The Court is of the opinion that it is the duty of the District Attorney to call Dr. Helfand to the witness stand, that the defendant should not be placed in a position where he is compelled to call a witness who might be termed hostile and certainly antagonistic to the defense. The Court has conferred with the District Attorney and counsel for the defense and it is agreeable to the parties to this action that Dr. Helfand be called as a witness by the prosecution, with the understanding that he is to give full testimony in the same manner that he did at the previous trial."

This was followed on the next day by a ruling of the trial judge in the presence of the jury when Dr. Helfand was called as a witness (case on appeal, p. 251, folio 751):

"The point I make is this. Let us be clear about it. If this witness testifies to any incriminating statements made by this defendant, I want to say at the outset, that the jury must not in anywise, shape, form or manner consider such statements as indicating any guilt on the part of this defendant."

And, later in his charge the trial judge instructed the jury (case on appeal, p. 893, folio 2678–2679):

"I charge you, gentlemen, as a matter of law, that the so-called Helfand confession was not voluntarily made; that it was due to mental coercion practiced by the physician upon the defendant. That, in and of itself, renders it worthless as evidence of guilt. It may not be regarded by you, even in the slightest degree, as any evidence of guilt."

With these special instructions and this charge the constitutional rights of the petitioner were fully and completely protected, with regard to the Helfand statement. Lyons v. Oklahoma, supra.

The trial record shows that Dr. Helfand began talking to petitioner at about 5 p. m. on January 13, 1950; that he was introduced to petitioner by Meenahan. (p. 309, folio 927.) That Meenahan then went down to a basement room and listened to a loud speaker on a recording machine "wired" up to the room where Dr. Helfand and the petitioner were talking (p. 327, folio 981); that the district attorney and police officers were there too. While listening Meenahan heard the petitioner say to the doctor, "I would like to speak to Captain Meenahan. * * * He seemed

to be a good egg, and I would like to talk to him if I could." (Page 310, folio 929.) It was about 6:30 p. m. when Meenahan went into the room (p. 327, folio 981); Dr. Helfand remained ·for a few minutes and left; Meenahan spoke to petitioner for about an hour; it was during this conversation that petitioner, while they were alone, again narrated the gory details of the murders. (pp. 314–16; folios 941 et seq.) There is no evidence that Dr. Helfand spoke to petitioner after 6:30 p. m. or that at any subsequent time he was in his immediate presence.

The record also shows that William Herrschaft testified that he spoke to petitioner in the captain's office of the 88th precinct on the evening of Friday, January 13; that petitioner and Herrschaft were alone in the room at the time; that the following conversation was had between them:

"A. He (the petitioner) said, 'Here is the combination of the safe. I want you to get administrative powers and operate the company,' and then I (Herrschaft) said to him, 'What's this all about? What are you giving me the combination of the safe for? And why the powers to operate the company?'

\*    \*    \*    \*    \*    \*

"And he said, 'Well, you know what it's all about; I did it.'

\*    \*    \*    \*    \*    \*

"I said, 'Do you mean that you killed your own mother and father?'

\*    \*    \*    \*    \*    \*

"He said, 'I did it' again; he repeated it.

\*    \*    \*    \*    \*    \*

"I asked him why; why he would do anything like that, and he said, 'Oh, I don't know; I guess I just blew my top.'" (pp. 349–50, folio 1047–49.)

Before Herrschaft went into the captain's room to speak to petitioner, he had waited in another room for approximately 2½ to 3 hours (folio 1079). (It was during part of this time that Dr. Helfand was with the petitioner.) Herrschaft did not know and no one told him that the captain's room had been "wired" and he "didn't even have the slightest idea" that a psychiatrist had been questioning the petitioner. (p. 361, folio 1083.) The entire talk in the captain's room between Herrschaft and petitioner was "not very long \* \* \* possibly five minutes" (p. 364, folio 1091); then Meenahan came into the room, and Herrschaft went out leaving Meenahan with petitioner. (p. 371, folio 1111.)

The trial record also shows that the petitioner while still in custody of the 88th precinct was interrogated by two assistant district attorneys later that same evening of January 13, at about 10 p. m.

■ It was on this showing that the trial judge received these three later statements of petitioner in evidence, leaving their voluntary character to the jury. This conformed to New York procedure and with the constitutional requirements of due process. The New York rule has been stated in People v. Weiner, 1928, 248 N.Y. 118, 122, 161 N.E. 441, 443:

"The question whether there is any evidence of the existence of a voluntary confession is one of law. In the first instance this question must, of course, be decided by the trial judge. If the evidence shows without dispute that the confession was extorted by force or fear, or if a verdict that it was freely made would be clearly against the weight of evidence, the judge should reject it. Only where a fair question of fact is presented should the jury be permitted to determine whether the confession is voluntary. If there is no such conflict, and if the evidence points clearly to the involuntary nature of the confession, the judge should exclude it as without evidence to support it."

■■ I have noted that the trial judge ruled that the statement to Dr. Helfand was not voluntarily made, and instructed the jury that it was "due to mental coercion" and "worthless as evidence of guilt." But a conclusion that a statement of a defendant has been coerced does not necessarily render all subsequent statements inadmissible.

"If the relation between the earlier and later confession is not so close that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process." Lyons v. Oklahoma, supra, 322 U.S. at page 603, 64 S.Ct. at page 1213.

The "closeness" to the earlier invalid confession which precedes subsequent confessions is not to be measured alone in terms of the time, be it minutes, hours or even days, which elapse between the statements of the defendant. The test to be applied concerns the conditions under which a defendant was kept or restrained during the interval between the statements and the effect those prior conditions may have had upon his mind, will and ability to exercise free will and to choose between making or not making a further statement. The Supreme Court "has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." United States v. Bayer, 1947, 331 U.S. 532, 540–541, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654.

With respect to petitioner's statement to Meenahan, the trial judge charged (p. 894, fols. 2680–82):

"Therefore, it is now clear that the Helfand confession may not, under any circumstances, be considered by the jury as evidence of guilt. The Helfand confession becomes material with regard to another problem which I shall discuss with you later.

"We shall now consider the so-called Meenahan confession. First, we must determine whether the confession was made. If you find that such confession was in fact made, as claimed by the prosecution, you must then determine whether the provisions of the law governing confessions which I have already called to your attention have been violated, and, thus, rendered the confession worthless as evidence of guilt.

"* * * The burden is upon the People to satisfy you beyond a reasonable doubt that it was voluntary and not made under a promise of leniency.

"* * * I charge you that you are bound to consider the established fact that Dr. Helfand practiced illegal coercion upon the defendant and made authorized promises of leniency to him. The presumption is that such coercion and promise of leniency continued to affect the defendant's later confessions; unless the prosecution has convinced you, beyond a reasonable doubt, from all the credible evidence in the case, that such coercion and promise of leniency did not extend over and affect the later confession made to Meenahan. Unless you are so convinced, the later confession made to Meenahan must be entirely disregarded and not considered by you as evidence of guilt."

With respect to the Herrschaft statement the instructions were, in part, as follows (p. 895, fols. 2683–2684):

"* * * Was it voluntary? Did the Helfand coercion and the promises extend over and affect this confession? Did the prosecution sustain the burden of establishing, beyond a reasonable doubt, that the coercion and promises did not carry over and affect the Herrschaft confession? * * * It is only if you find, beyond a reasonable doubt, that the confession was voluntarily made and true that you may consider it as evidence of guilt."

The trial judge further charged with regard to the so-called Assistant District Attorneys' confessions to the same effect, and the jurors were instructed that they must be satisfied beyond a reasonable doubt that the promise of leniency made by the doctor "did not carry over and induce and influence the making of this confession." (p. 895, fol. 2685.) It was further charged that if the jury rejected all the confessions the petitioner would have to be acquitted since the remaining evidence in the case was in-

sufficient to predicate a verdict of guilt. (p. 896, fol. 2687.)

The contention of petitioner that the coercion and promise referred to did in fact carry over and into each of the subsequent confessions and that of the prosecution that they did not so extend and that they were not induced by any promise of leniency were pointed out to the jury by the trial judge. (p. 896, fols. 2687–88.) This issue was clearly defined and submitted to the jury.

The above instructions fairly raised the issue as to the voluntary character of the statements.

I conclude that the facts are not irreconcilable with a finding by a jury that the subsequent statements of petitioner were voluntary. Here, I find that since "different inferences may fairly be drawn from admitted facts, the trial judge and the jury are not only in a better position to appraise the truth or falsity of the defendant's assertions from the demeanor of the witnesses but the legal duty is upon them to make the decision." Lyons v. Oklahoma, supra, 322 U.S. at page 602, 64 S.Ct. at page 1212.

The petition is denied.