**John R. CRANOR, Superintendent of the Washington State Penitentiary at Walla Walla, Washington, Appellant,**

v.

**Albert GONZALES, Appellee.**

**No. 14245.**

United States Court of Appeals
Ninth Circuit.

Aug. 22, 1955.

---

1. See Wigmore on Evidence, 3d ed., § 2220, Vol. VIII, pp. 190–191.

2. Wigmore on Evidence, § 285, Vol. II, p. 162.

upon the verdict of a jury of the crime of murder in the first degree which he was charged to have committed on January 7, preceding. In the court below, Gonzales alleged, and the court found that at the trial of Gonzales in the State court, at which he was represented by counsel, there was introduced and received in evidence against him a certain written confession; that this confession was obtained from Gonzales by certain Scattle police officers who, during a period of questioning which extended from about the hour of 1:30 A.M. on January 7 until about 2 A.M. the following day, struck him, pushed him against the walls of the room where he was confined, threatened to kick him in the face, and otherwise abused him; that during this period of some 24 hours of constant questioning, Gonzales was denied permission to call a lawyer or communicate with friends or the Philippine Consul (Gonzales was a Filipino) and finally, in fear of further abuse, physical assault and mistreatment, he signed the statement which was received as a confession, which statement was signed as the result of fear for the safety of his person and his life, and was induced by the police brutality thus employed.

Don Eastvold, Atty. Gen., Cyrus A. Dimmick, Asst. Atty. Gen., State of Washington, for appellant.

R. Max Etter, Ellsworth I. Connelly, Spokane, Wash., for appellee.

Before HEALY and POPE, Circuit Judges, and HAMLIN, District Judge.

POPE, Circuit Judge.

This is an appeal from an order granting the petition of appellee Gonzales for a writ of habeas corpus against appellant, Superintendent of the Washington State Penitentiary at Walla Walla, Washington.

On April 28, 1950, Gonzales was sentenced to a term of life imprisonment by the Superior Court of King County, Washington, pursuant to his conviction

At the trial in the State court, objection to the admission of the statement in question was made on the ground that it was coerced. Pursuant to the established procedure in the State of Washington, evidence was received at the trial as to the circumstances under which the confession was made and the written document was admitted in evidence but submitted to the jury with instructions to consider the confession only if found to have been voluntary.[1] There was substantial evidence other than the confes-

[1] This opinion proceeds upon the assumption that the instructions given to the jury measured up to those described in Stein v. People of State of New York, 346 U.S. 156, 170–175, 73 S.Ct. 1077, 97 L.Ed. 1522. In Stein the jury were instructed: " 'You must find beyond a reasonable doubt that these confessions, or either of them, was a voluntary one before you would have a right to con- sider either of them.' " 346 U.S. at page 173, 73 S.Ct. at page 1087. The instructions at the Gonzales trial contained no such admonition to the jury. The jury was told that confessions "not caused by duress or fear produced by threats, are to be considered by the jury", but there was no express direction to disregard the confession if they did not find it to be voluntary. Nor was there any definition

sion upon which the jury could have based its verdict of guilty. (Actually two statements were signed by Gonzales, but only one amounted to a confession; hence his statement is referred to in the singular.)

Following his conviction Gonzales gave notice of appeal to the Supreme Court of Washington but the appeal was not perfected and was dismissed without consideration of its merits. Subsequently he petitioned the Supreme Court of the State for a writ of habeas corpus. This was denied without opinion, and thereafter Gonzales' application to the Supreme Court of the United States for certiorari was denied. Gonzales then filed the petition which we now consider, claiming that his conviction was procured through the use of a coerced confession in violation of the due process clause of the Fourteenth Amendment. Upon the trial court's finding that Gonzales' claim of coercion was supported by the evidence and that the alleged beating did in fact occur and caused the confession, the court concluded that he was being illegally detained in that his conviction had been procured through denial of his constitutional rights. The court held that he had exhausted his remedies in the courts of the State of Washington and ordered the writ to issue and Gonzales released from confinement unless he be granted a new trial within 60 days after the court's judgment became final.

The principal contention made by appellant here is that the court below had no right to try the question of fact as to whether or not Gonzales' confession was coerced in view of the fact that this issue had been fully tried in the Washington court by procedures which met all of the standards approved by the Supreme Court in Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522. The argument is that what the court below has done is to review de novo a factual question which was properly submitted to the State trial court and there disposed of in a manner consistent with due process; that if the State court has honestly applied the pertinent doctrines relating to the coerced

of what would constitute coercion, other than the quoted reference to "duress or fear produced by threats". Lacking was any reference to the possibility of "implied coercion because of the manner in which [Gonzales was—] kept in custody", such as that in the Stein instructions. It also seems plain that the Washington statute on confessions as evidence is less strict than the standards set by the Supreme Court under the Fourteenth Amendment. The statute, Sec. 10.58.030, Revised Code of Washington, provides: "Confession as evidence. The confession of a defendant made under inducement, with all the circumstances, may be given as evidence against him, except when made under the influence of fear produced by threats; but a confession made under inducement is not sufficient to warrant a conviction without corroborating testimony."

The "facts which are not in dispute at all" in Ashcraft v. State of Tennessee, 322 U.S. 143, 153, 64 S.Ct. 921, 926, 88 L.Ed. 1192, and which were held to demonstrate that the confession there was procured by violation of due process, do not disclose "fear produced by threats" but do disclose 36 hours continuous questioning by relays of officers. So also in Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, and Turner v. Com. of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810. State v. Winters, 39 Wash.2d 545, 236 P.2d 1038, seems to hold that, absent "fear", mere "inducement" resulting from constant and long periods of questioning, or from threats to keep the accused in jail until he confessed, will not eliminate consideration of the confession.

In Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L. Ed. 1029, an omission from the charge there given somewhat similar to that first mentioned in this footnote, was considered sufficiently important to merit attention. The court said 324 U.S. at page 410, 65 S.Ct. at page 786: "The jury at no time was admonished that it could not convict on the basis of the first confession nor considered it as evidence against Malinski." But compare Lyons v. State of Oklahoma, 322 U.S. 596, 601, 64 S. Ct. 1208, 88 L.Ed. 1481. We find no occasion to consider here whether the noted omission constituted a "vital flaw" in the State's process, for the record fails to show any objection to the instructions as given.

confession to the best of its ability, the accused has been accorded his constitutional rights and the federal district court is without power, jurisdiction or authority to determine the issue decided in the State court to the contrary. Further, that if the United States Supreme Court in Stein v. People of State of New York, supra, was without power to set aside the verdict or judgment in that case, a fortiori the federal district court had no power to grant the writ of habeas corpus as it did by the order here appealed from.

For reasons appearing presently we approach this case as one of first impression. In some respects it most nearly resembles Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. In that case at petitioner's second trial for murder, certain confessions were used against him; the issue as to the voluntariness of these confessions was submitted to the jury and petitioner was convicted; after denial of certiorari by the United States Supreme Court, Leyra v. People of State of New York, 345 U.S. 918, 73 S.Ct. 730, 97 L.Ed. 1351, petitioner filed his habeas corpus proceeding in the United States district court charging that the confessions used against him had been coerced, depriving him of due process of law. Upon consideration the district court denied the petition. 113 F.Supp. 556. The court of appeals affirmed, 2 Cir., 208 F.2d 605, but the Supreme Court reversed, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948, holding that in view of the fact that the confessions used at the trial at which petitioner was convicted so closely followed an earlier confession given to a psychiatrist, which the New York Court of Appeals had held at an earlier trial was obtained by "mental coercion", People v. Leyra, 302 N.Y. 353, 98 N.E.2d 553, these subsequent confessions thus used must be held to have been extracted by means not consistent with due process of law. Here the judgment of the Supreme Court amounted in substance to a determination that the federal district court upon the hearing of petitioner's application for the writ, should have reached a like conclusion,—a conclusion manifestly at variance with that reached by the jury in the State court trial.

Now if the vital issue in Leyra v. Denno, supra, both in the New York State court and in the federal district court was a question of fact, namely, whether the confessions used against the petitioner were voluntary or involuntary, and if it be assumed, as we think we must here, that such issue was adequately and properly submitted to the determination of the jury in the trial in the State court, then that case would appear to lend some weight to the suggestion that it was appropriate for the district court again to try the same issue and to make findings and arrive at a conclusion different from that implicit in the verdict of the State jury. We think, however, that we may not rely upon Leyra v. Denno to that extent in view of the fact that here the type of coercion found by the court places this case in a different category from that one.

We have here in mind the distinction drawn by Mr. Justice Frankfurter in Brown v. Allen, 344 U.S. 443, 506–507, 73 S.Ct. 397, 446, 97 L.Ed. 469, between cases in which the issue turns upon "basic facts" and those where the issue turns upon "interpretation of the legal significance of such facts", that is to say, the distinction between the cases falling in what he designates as the fourth and fifth categories which are there listed.

In this case the coercion which the trial court found existed consisted of striking and beating, and threats of further striking and beating, of Gonzales. Thus the issue upon which the whole question of denial of constitutional right depends, to use the words of the Court, "turns on basic facts"; and this is a case in which it appears "that the facts (in the sense of a recital of external events and the credibility of their narrators) have been tried and adjudicated against the applicant." 344 U.S. at page 506, 73 S.Ct at page 446. This was not

a case in which the issue turned upon the question whether or not a mere interrogation was carried on for such length of time and under such circumstances as to require a conclusion or interpretation that the facts disclosed a mental or psychological coercion.

 The distinction here referred to is noted by Mr. Justice Jackson in his opinion for the Court in Stein v. People of State of New York, supra, 346 U.S. at pages 182 to 184, 73 S.Ct. at page 1091. Physical violence or threat of it automatically invalidates confessions and in such cases "there is no need to weigh or measure its effects on the will of the individual victim." On the other hand, where psychological coercion is claimed, since interrogation of a suspect is not as such unlawful and is not inherently coercive, whether interrogation has been so prolonged and unremitting and accompanied by other circumstances such as deprivation of refreshment, rest or relief as to accomplish extortion of an involuntary confession, depends "upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." 346 U.S. at page 185, 73 S.Ct. at page 1093.

The findings of the trial court which are here reviewed, although they recite that the interrogation of Gonzales continued for some 24 hours during which he was without sleep or rest, contain no finding or recital that this prolonged process of interrogation was what made the confession involuntary. We deal here with a finding that "during the progress of the questioning petitioner Gonzales was struck in the lower abdomen near the groin on several occasions, and was, on one occasion, thrown, shoved, struck or pushed over and against a part of the building and room in which Gonzales was confined and questioned; that a police officer of the City of Seattle threatened, during the interrogation, to kick the petitioner's 'God damn face'; * * * and his said statement was signed as a result of fear * * .* for the safety of his person and life and said statement or confession was the result of fear and was induced by the police brutality employed."

We note therefore that we have here the type of case referred to under the heading of "Fourth" in the opinion of Mr. Justice Frankfurter in Brown v. Allen, supra, 344 U.S. at page 506, 73 S.Ct. at page 446, as follows: "When the record of the State court proceedings is before the court, it may appear that the issue turns on basic facts and that the facts (in the sense of a recital of external events and the credibility of their narrators) have been tried and adjudicated against the applicant. Unless a vital flaw be found in the process of ascertaining such facts in the State court, the District Judge *may* accept their determination in the State proceeding and deny the application." (Emphasis ours.) This does not appear to be the case alluded to by Mr. Justice Frankfurter under the heading of "Fifth" 344 U.S. on page 507, 73 S.Ct. on page 446, as follows: "Where the ascertainment of the historical facts does not dispose of the claim but calls for interpretation of the legal significance of such facts, see Baumgartner v. United States, 322 U.S. 665, 670–671, 64 S.Ct. 1240, 1243, 88 L.Ed. 1525, the District Judge *must* exercise his own judgment on this blend of facts and their legal values." (Emphasis ours.) [2]

2. It might well be suggested that where a confession is assertedly coerced through prolonged interrogation, during which the prisoner is denied rest or food, or where the interrogation involves aspects comparable to those attending Leyra's first confession to the psychiatrist, the determination of whether the facts relating to the period of interrogation—the mental qualifications of the prisoner, his opportunities for rest and refreshment, all operated to overpower mental resistance, or to induce an involuntary confession, is essentially a determination of a question of fact although one to be determined by inference from other facts. Thus a finding of negligence is a finding of fact although one inferred from a consideration of many other facts. Whether there would be reason for classifying

We think therefore that the question which we must answer as to whether it was proper for the trial court here to hold hearings on the merits and determine the facts notwithstanding there had been a determination of the facts in the State court proceeding, is not answered in Leyra v. Denno.

This brings us to another question.—We have noted that the proceedings taken in the State court for the resolution of the question of coercion of the confession which was introduced resembled those discussed and held proper in Stein v. People of State of New York, supra. In that case the court noted that the method of trying the coercion issue to that jury was "not informative as to its disposition". As noted there, we "cannot learn whether the final result was to receive or to reject the confessions as evidence of guilt." The court considered the constitutional effect of both hypothetical alternatives. 346 U.S. at pages 177–194, 73 S.Ct. at page 1089. Now, if we assume that the court below was empowered to make the finding which it did, namely, that Gonzales' confession was coerced by beatings and threats, what proof is there to warrant a conclusion that the jury in the State court did not arrive at exactly the same conclusion and therefore, as instructed to do, disregarded and rejected the confession, and rendered its verdict

on the basis of the other evidence? Since the burden was upon the petitioner in the court below to prove that his conviction was obtained by the use of a coerced confession, has he sustained that burden in view of the possibility that the jury based its verdict solely upon the evidence apart from the confession? [3]

We feel that we must reject a suggestion such as this which would impose upon an accused in the position of Gonzales a burden of proving that which in the nature of the case it is impossible to establish. If it develops that we are required to accept as a fact the finding of the trial court that Gonzales' confession was extorted from him by physical violence, the conclusion must follow that the writ must issue notwithstanding the conceivable possibility that the jury rejected the confession and disregarded it.

In Stein v. People of State of New York, supra, Mr. Justice Jackson, although stating that it was, 346 U.S. at pages 193–194, 73 S.Ct. at page 1097, "not error if the jury admitted and relied on the confession and was not error if they rejected it and convicted on other evidence", nevertheless pointed out with great clarity the marked disadvantage which an accused suffers under the system of procedure there followed. The same situation confronts Gonzales with respect to what happened to him in the State court.[4]

---

such a determination within Mr. Justice Frankfurter's fourth classification we need not consider here for this is not that type of case.

3. In Stroble v. State of California, 343 U.S. 181, 190, 72 S.Ct. 599, 603, 96 L. Ed. 872, the court said: "If the confession which petitioner made in the District Attorney's office was in fact involuntary, the conviction cannot stand, even though the evidence apart from that confession might have been sufficient to sustain the jury's verdict." In Brown v. Allen, supra, the court said: "A conviction by a trial court which had admitted coerced confessions deprives a defendant of liberty without due process of law. * * * This is true even though the evidence apart from the confessions might have been sufficient to

sustain the jury's verdict." 344 U.S. at page 475, 73 S.Ct. at page 416. The problem now considered arises because apparently after Stein these statements must be qualified by adding "unless the jury was instructed that if it found the confession coerced, it should disregard and reject it." See the quotation from Malinski v. New York in footnote 1, supra. The question could not arise in Leyra v. Denno, supra, for as appears from the dissent of Judge Fuld in People v. Leyra, 304 N.Y. 468, 108 N.E.2d 673, the trial judge held, and charged the jury, that the other evidence, apart from the confession, was insufficient to convict.

4. "For all we know, the confession issue may have been decided in their favor. The jury may have agreed that the con-

The procedure which has been followed in the Gonzales case in the State court results in an ambiguity. It it were possible to determine that the issue in the State court has been resolved by the jury deciding that the confession would be rejected and the question of guilt determined by reference to other evidence, then the district court here and this court relying upon what is said in Stein v. People of State of New York, supra, as to the propriety of the second alternative there discussed, could well hold that Gonzales has failed to prove that the confession was used to procure his conviction and then the writ must be denied.

■ But the ambiguity cannot be resolved and we think that a person in the position of Gonzales who offers evidence that the confession received at his trial was procured through force ought not to be denied the opportunity to vindicate his constitutional rights merely because of the impossibility of making certain that which necessarily always will be uncertain and not susceptible of determination. The constitutional rights which Gonzales here claims are so important that such a result should not be imposed upon him. The proper rule to be applied is that when it appears that a confession was in fact coerced, and when it cannot be determined that such coerced confession was or was not used by the jury to arrive at their verdict of guilty, the writ should issue.

The principle we here invoke is similar to that employed by the Supreme Court in Dixon v. Duffy, 344 U.S. 143, 73 S.Ct. 193, 97 L.Ed. 153. There, whether the Supreme Court, which had granted certiorari, 341 U.S. 938, 71 S.Ct. 995, 95 L.Ed. 1366, to the Supreme Court of California, had jurisdiction to determine whether petitioner had been deprived of his rights under the federal Constitution depended upon whether the judgment of the State Supreme Court rested on an adequate State ground. It finally developed that it was impossible to secure from the Supreme Court of California an answer to this question. The Supreme Court did not, because the State court's decision might have rested on an adequate State ground, dismiss the writ of certiorari. It vacated the judgment of the State Supreme Court and remanded the cause for further proceedings. By so doing, the Supreme Court made sure that the petitioner would not be denied an opportunity ultimately to procure a determination of his constitutional rights should it appear that they had been denied. The Court did not cast off its responsibility merely by reason of the inability of petitioner to resolve the ambiguity.

This brings us to the vital and basic question here involved, and that is, whether notwithstanding the issue as to the coerced confession has been held resolved in the State court in a manner which the Supreme Court found to be adequate in Stein v. People of State of New York, supra, a federal district court may upon application for a writ of habeas corpus, try and determine the same

---

fessions were coerced, or at least that the State had not met the burden of proving beyond a reasonable doubt that they were voluntary. If the method of submission is, as we believe, constitutional, it leaves us to review hypothetical alternatives.

"This method of trying the coercion issue to a jury is not informative as to its disposition. Sometimes the record permits a guess or inference, but where other evidence of guilt is strong a reviewing court cannot learn whether the final result was to receive or to reject the confessions as evidence of guilt. Perhaps a more serious, practical cause of dissatisfaction is the absence of any assurance that the confessions did not serve as makeweights in a compromise verdict, some jurors accepting the confessions to overcome lingering doubt of guilt, others rejecting them but finding their doubts satisfied by other evidence, and yet others or perhaps all never reaching a separate and definite conclusion as to the confessions but returning an unanalytical and impressionistic verdict based on all they had heard." 346 U.S. at pages 177–178, 73 S.Ct. at page 1089.

issues. We think it is plain that the Stein case furnishes no answer to this question.

In the Stein case the Supreme Court had before it no facts other than those contained in the State court record which had been certified to the Supreme Court upon the issuance of the writ of certiorari to the Court of Appeals of New York, 344 U.S. 815, 73 S.Ct. 51, 97 L.Ed. 634. In considering that record the Supreme Court was acting in a purely appellate capacity and had neither precedent nor means for adding any new facts to the record before it. We think the situation there is accurately described in the opinion of Mr. Justice Frankfurter in Watts v. State of Indiana, 338 U.S. 49, 50, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801: "On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court."

But the jurisdiction assumed and undertaken by the district court in this case was in no sense equivalent to the jurisdiction which the Supreme Court exercised in the Stein case and in no sense constituted a review or overruling of the case in the State court. The jurisdiction of the district court, if it existed, was that described by Mr. Justice Frankfurter in Brown v. Allen, supra, 344 U.S. at page 510, 73 S.Ct. at page 448: "Insofar as this jurisdiction enables federal district courts to entertain claims that State Supreme Courts have denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a higher court. It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby federal law is higher than State

law. It is for the Congress to designate the member in the hierarchy of the federal judiciary to express the higher law. The fact that Congress has authorized district courts to be the organ of the higher law rather than a Court of Appeals, or exclusively this Court, does not mean that it allows a lower court to overrule a higher court. It merely expresses the choice of Congress how the superior authority of federal law should be asserted." We think it is clear that the action of the Supreme Court in Stein does not serve to negative the possibility that the district court here had the jurisdiction which it assumed.

It is abundantly clear from what was said by the Supreme Court in Brown v. Allen, supra, that the court below might have accepted the determination of the issue made in the State proceeding and have denied the application. Mr. Justice Frankfurter's statement to that effect in that case has been quoted above.

In the case of Brown, one of three petitioners in that case, the district court upon an examination of the record of his case in the North Carolina courts, dismissed his application for the writ without argument or testimony although Brown had asserted as one ground for the issuance of the Writ the use of a coerced confession against him. The Supreme Court held that a repetition of the trial in the federal district court was not required under the circumstances of that case.[5]

But our question here is not whether the district court might have accepted the State court's resolution of the issue but rather whether it was obliged to do so and whether in trying the issue, receiving evidence and making its own fact determination it was acting without authority or erroneously. It is our opinion

5. "Applications to district courts on grounds determined adversely to the applicant by state courts should follow the same principle—a refusal of the writ without more, if the court is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion. Where the record of the application affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required." 344 U.S. at page 463, 73 S.Ct. at page 410.

that the answer is to be found in the carefully guarded language used in Brown v. Allen, supra, and in the language used by Congress in establishing the power to grant the Writ, particularly Sections 2241 and 2254 of Title 28 U.S.C.A.

■ In the cases of two of the petitioners in Brown v. Allen, the district court, although basing its determination upon the records of the State courts, nevertheless took further evidence. The propriety of its doing so is implicit in the decision. The language used by the court in dealing with this right of the district court to accept the resolution of the issue made in the State courts makes it abundantly clear that it is likewise within the discretion of the district court not only to receive new evidence, but to hold a hearing and determine the merits for itself when convinced that such a hearing would serve the ends of justice, or that it is necessary to redress violations of the Constitution. Thus, following the statement of Mr. Justice Reed, quoted in footnote 5 above, that a repetition of the trial is not required, he goes on to say: 344 U.S. at pages 463–464, 73 S.Ct. at page 411. "However, a trial may be had in the discretion of the federal court or judge hearing the new application. A way is left open to redress violations of the Constitution. * * * It is necessary to exercise jurisdiction to the extent of determining by examination of the record whether or not a hearing would serve the ends of justice." The opinion makes it plain that the State's adjudication carries some weight but that it is not conclusive. 344 U.S. at page 458, 73 S.Ct. at page 408—"In other circumstances the state adjudication carries the weight that federal practice gives to the conclusion of a court of last resort of another jurisdiction on federal constitutional issues. It is not *res judicata.*" The district court's right to accept the State's solution of the issue is stated in permissive terms: "The District Court *may* properly depend upon the state's resolution of the issue." (Emphasis ours.) And we note the same word "may" in the portion of Mr. Justice Frankfurter's opinion previously quoted.

Brown v. Allen, supra, makes clear through an analysis of the provisions and legislative history of the sections of the Act relating to the power of the district court to grant the writ of habeas corpus why it must be held that it is within the discretion of the federal court to entertain the new application, to receive evidence in support thereof, and to make its own findings of fact in support of the constitutional claim.[6]

■ Section 2241 of Title 28 provides that "Writs of habeas corpus may be granted by * * * the district courts * * * within their respective jurisdictions. * * * The writ of habeas corpus shall not extend to a prisoner unless * * * (3) he is in custody in violation of the Constitution or laws or treaties of the United States." That this general language of Section 2241 extends to writs on behalf of persons in custody of the State is made plain by Section 2254 which specifically refers to such applications on behalf of such State prisoners and attaches thereto the condition of exhaustion of State remedies.

In the language previously quoted from the opinion of Mr. Justice Frankfurter, in which he points out that this is not a case of a lower court reviewing the judgment of a higher court, it is made plain just what Congress undertook to do by these statutory enactments. As there stated, Congress was exerting its power under the Supremacy Clause of the Constitution to designate a court having authority to issue that writ even in the case of a State prisoner when he is held in violation of the Constitution of the United States. The Fourteenth Amendment itself recites: "The Congress shall have power to enforce, by

6. See particularly the discussion 344 U.S. on page 462, 73 S.Ct. on page 409 and notes 16 and 17 thereon.

appropriate legislation, the provisions of this article." Section 2241, in providing for the grant of the writ, and Section 2243, in providing that "The court shall summarily hear and determine the facts, and ·dispose of the matter as law and justice require", has necessarily conferred upon the court below the authority and jurisdiction to hear and determine the application in the manner in which the district court has here done. As stated in United States ex rel. Elliott v. Hendricks, 3 Cir., 213 F.2d 922, 929: "If the authority of federal courts is to be more limited than that provided by the present statute, that limitation must be made by Congress." [7]

The rule which appellant asks us to lay down admits of no exceptions.[8] If we accepted his position we would have to hold that the federal district court could *never* hear and determine a case of this kind, however meritorious. In his opinion for the Court in Brown v. Allen, 344 U.S. at pages 498–510, 73 S.Ct. 397, Mr. Justice Frankfurter points out that a study of some 3702 applications for the writ showed that in the preceding four years only five state prisoners, all told, were discharged by federal district courts. Hence he characterized the concern lest state convictions be upset by allowing district courts to entertain applications on behalf of state prisoners as "a baseless fear". But that there can and will be some cases in which the federal district court *may* properly grant the writ to a state prisoner he makes abundantly plain. Says the opinion, 344 U.S. at page 500, 73 S.Ct. at page 443: "But the prior State determination of a claim under the United States Constitution cannot foreclose consideration here of such a claim, else the State court would have the final say which the Congress, by the Act of 1867, provided it should not have [9] * * *", 344 U.S. at page 501, 73 S.Ct. at page 443. "Our problem arises because Congress has told the District Judge to act on those occasions, however rare, when there are meritorious causes in which habeas corpus is the ultimate and only relief and designed to be such. * * *" 344 U. S. at page 508, 73 S.Ct. at page 447. "These standards, addressed as they are to the practical situation facing the District Judge, recognize the discretion of judges to give weight to whatever may be relevant in the State proceedings, and yet preserve the full implication of the requirement of Congress that the District Judge decide constitutional questions presented by a State prisoner even after his claims have been carefully considered by the State courts. * * *" 344 U.S. at page 509, 73 S.Ct. at page 448. "But it would be in disregard of

7. The general understanding and recognition of this jurisdiction thus vested in the federal courts and judges thereof by the statutes as now phrased, has given rise to much agitation on the part of the Conference of Chief Justices, the Association of State Attorneys General and other groups for a revision of Section 2254 of Title 28. A recommendation of an amendment of that section said to have the approval of these objecting groups, was drafted by a committee of the Judicial Conference of the United States and has been introduced in Congress as House Bill 5649 and Senate Bill 1753. The text of the proposed amendment appears in the annual report of the proceedings of the Judicial Conference of the United States of September 22–24, 1954, pages 22 and 23.

8. The position is stated thus: "[A] federal district court judge sitting by him-

self may not decide a question of fact which has been properly presented to a jury in a court of competent jurisdiction in the State of Washington notwithstanding that the district judge may feel the jury came out wrong."

9. "Of course, this Court cannot allow itself to be completely bound by state court determination of any issue essential to decision of a claim of federal right, else federal law could be frustrated by distorted fact finding". Stein v. People of State of New York, supra, 346 U.S. at page 181, 73 S.Ct. at page 1091.

In 1867 the members of Congress must have been acutely aware that the "appropriate legislation" clause (Section 5) of the proposed Fourteenth Amendment was there for the very purpose of seeing to it that certain states should indeed not have the "final say".

what Congress has expressly required to deny State prisoners access to the federal courts."

■ Since for the reasons indicated the district court here properly entertained and heard the application of Gonzales for a writ of habeas corpus, Rule 52 (a), Fed.Rules Civ.Proc. 28 U.S.C.A. prohibits us from disturbing the findings made by that court unless they are clearly erroneous; that they are not so erroneous must be manifest when it is borne in mind that the trial judge heard and observed the witnesses and noted their demeanor and manner of testifying, and had full opportunity to judge of the probability of their respective stories and to arrive at a conclusion as to the credibility of those who testified before him.

■ It is apparent from the findings of the trial court and from the carefully worded opinions which the court filed below that it was very conscious of the responsibility which fell upon the judge in determining the issue in this case. We observe nothing in the record here on the basis of which we could conclude that the trial judge failed to give due weight to the prior determination of fact issues in the State court. Here the judge proceeded to take evidence, as did the judge in two of the Brown v. Allen cases. As he did so, he necessarily inquired "whether or not a hearing would serve the ends of justice". The evidence, sufficient to convince the judge that Gonzales had in fact been beaten in the course of coercion of a confession, when considered in the light of the inherently unsatisfactory character of the State court proceedings,[10] warranted the exercise of the court's discretion to hear the case and determine the constitutional issue.

■ It is clear that Gonzales had exhausted his State remedies. "[T]his Court will review state habeas corpus proceedings even though no appeal was taken, if the state treated habeas corpus as permissible. Federal habeas corpus is available following our refusal to review such state habeas corpus proceedings". Brown v. Allen, supra, 344 U.S. at page 486, 73 S.Ct. at page 422.

Other specifications of error are to the effect that the findings of the trial court failed to take into consideration sundry discrepancies which it is asserted existed in the testimony of various witnesses upon which the trial court based its findings. No useful purpose would be served by an extended discussion of these specifications for they merely amount to an effort to reargue the facts of the case in this court. It is sufficient to say as we have previously done that the findings are adequately supported by the evidence before the court below.

The judgment is affirmed.

---

10. Where, as Mr. Justice Jackson suggested, perhaps the jury may have been in a situation of "never reaching a separate and definite conclusion as to the confessions but returning an unanalytical and impressionistic verdict based on all they had heard". Stein v. People of State of New York, supra, 346 U.S. at pages 177–178, 73 S.Ct. at page 1089.