THE STATE OF CONNECTICUT *vs.* MICHAEL LURIA AND LOUIS LURIA.

First Judicial District, Hartford, October Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Motions for a change of venue (§ 6630), and for a separate trial of two or more jointly accused of crime, are addressed to the sound discretion of the trial court; and unless the record discloses that such discretion has been abused in a denial of the motions, the rulings of the trial court—as in the present case—will be sustained.

A challenge to the array is one to the whole panel, and will be allowed only upon some ground affecting the validity of their selection and summoning.

In the present case it appeared that the sheriff had had a personal conflict in the jail with one of the accused, but that the jury warrants received by him were served in each instance by his deputies, and that he had never talked with any of the jurors about the case, or influenced them in any way. *Held* that inasmuch as the accused had ample opportunity to test the suitability of each juror upon

his *voir dire* examination, the trial court acted properly in overruling the challenge to the array.

To aid in the correct interpretation to be placed upon an uncertain or ambiguous paragraph of a finding, this court may properly resort to the evidence, if all of it is certified and printed in the record, although its insertion therein was for a different purpose.

The accused were indicted for murder in the first degree in killing one S, who, according to the theory of the State, they mistook for B, against whom they harbored feelings of revenge, as the State asserted, for his supposed betrayal of them for breaking into and stealing goods from railway cars in that locality. *Held* that inasmuch as there was no evidence whatever of mistaken identity, the entire theory of the State's case as to motive and malice was without support; and therefore the trial court erred in its charge which permitted the jury to consider the question of mistaken identity as a factor in the situation, and also, and more seriously, in admitting evidence tending most strongly to prove that the accused were participants in the aforesaid railway theft, and that they believed B had been instrumental in their arrest.

Having begun a certain line of inquiry which the trial court notified counsel for the State that it would exclude, the latter insisted upon putting, and the court allowed him to put, a series of questions along that line, in the presence of the jury, for the purpose of securing a ruling upon each and thus laying the basis of an appeal or bill of exceptions. The questions thus propounded indicated that the accused were, or were believed to be, guilty of other serious crimes having no relation to the one on trial. *Held* that the course pursued was manifestly improper, involving, as it did, the recital of a series of facts prejudicial to the accused, in the hearing of the jury; that counsel should have prepared written interrogatories, or a general statement in writing of the facts it was desired to prove, and, in the absence of the jury, have presented it to the court, secured a ruling thereon, taken an exception, and moved for the insertion of these proceedings in the record.

Argued October 3d—decided December 17th, 1923.

INDICTMENT for murder in the first degree, brought to the Superior Court in Litchfield County and tried to the jury before *Maltbie, J.;* verdict and judgment of guilty of murder in the second degree, and appeal by the accused. *Error and new trial ordered.*

*Thomas F. Ryan*, with whom was *Frank B. Bozza* of Newark, New Jersey, for the appellants (the accused).

*Walter Holcomb,* State's Attorney, and *J. Clinton Roraback,* for the appellee (the State).

CURTIS, J. Upon the trial the following preliminary motions were made by one or both of the accused: (1) for a change of venue; (2) for a separate trial of each of the accused; (3) for a dismissal of the jury upon a challenge to the array.

The first and second motions were addressed to the sound discretion of the court, and unless the record discloses that such discretion has been abused by denying the motions, the rulings of the court will be sustained. A motion for a change of venue in a criminal case is made under authority of General Statutes, § 6630. This statute, by its terms, clearly denotes that such a motion is addressed to the sound discretion of the court. Upon the record in this case that discretion was not abused by denying the motion. As to a motion for a separate trial, we reaffirmed in *State* v. *Castelli,* 92 Conn. 58, 62, 110 Atl. 476, the rule laid down in *State* v. *Brauneis,* 84 Conn. 222, 226, 79 Atl. 70, in the following terms: "Whether a separate trial should be allowed to parties jointly indicted is within the discretion of the court. Ordinarily justice is better subserved where the parties are tried together. But cases arise where the defenses of the different parties are antagonistic, or where evidence will be introduced against one which will not be admissible against others. Where from the nature of the case it appears that a joint trial will probably be prejudicial to the rights of one or more of the parties, a separate trial should be granted when properly requested." None of the grounds here stated as a proper basis for the exercise of the discretion of the court in granting a separate trial appears in the instant case.

As to the challenge to the array, it is a challenge to

the whole panel and will only be allowed upon "some ground affecting the validity of the whole panel, and growing out of the proceedings in selecting and summoning the jurors composing the panel." 24 Cyc. p. 328; *State* v. *Hogan*, 67 Conn. 581, 583, 35 Atl. 508. The accused claimed that because of a physical conflict that arose in the Litchfield County jail before the trial, between the sheriff of the county and Michael Luria, one of the accused, there was animosity on the part of the sheriff toward the accused Michael Luria, and that as the sheriff had received the jury warrants for service he was liable in serving them to have influenced the jurymen summoned against the accused, especially Michael. It having been proved that the "sheriff received the jury warrants for the term of court at which this case was tried, but immediately handed them to deputies and served none of them himself, nor ever talked with any of the jurymen about the case," the court ruled that there was no sufficient ground to sustain the challenge to the array, and held that as to the suitability of particular jurymen, and whether they had been influenced by the deputies who served the warrants, or otherwise, against the accused, that could be determined upon their examination upon *voir dire*. The finding discloses that "thereafter the selection of the jury was begun, each prospective member being examined upon *voir dire* and forty-five being examined before the jury was finally chosen. Each member selected was accepted by the accused. Of those rejected, twenty-three were peremptorily challenged by the accused. Only two of those rejected stated that they had any opinion about the case derived from reading newspapers." The denial by the court of the motion of the accused for the dismissal of the jury was clearly correct, since nothing appears upon the record to indicate that the sheriff acted otherwise in the service

of these warrants than the impartial performance of his duty required.

The accused in their reasons of appeal allege that the court erred in charging the jury as follows: "Of course the application is obvious. The State claims here that these men who have killed John Sissere went to the house with the intent to kill Tony, but mistook Sissere for Tony, and this mistake would make the killing of John Sissere one with malice." And also erred in charging the jury as follows: "Now, of course, if you are satisfied beyond a reasonable doubt that these men went to this house with the intent to kill Tony this element would be fulfilled. More than that, if you find they went there to kill Tony but mistook the identity of Tony, this element would be fulfilled."

The question whether the court, in these excerpts, erred in charging upon a condition of fact not before the jury, is determined by reference to the facts claimed to have been proved as recited in the finding. We turn to the finding and discover that among the facts which it states that the State offered evidence to prove, were the following: Par. 132: "The murder of John Sissere was by the accused Louis Luria and Mike Luria, and was wilful, deliberate, premeditated and of their malice aforethought, and was either prompted by the motive of revenge against Tony Boscardin in the belief that he had betrayed them and the whereabouts of Louis Luria and that, in the pursuance of the design to murder Tony Boscardin, they shot and killed John Sissere, or was committed while they were engaged in the attempt to rob John Sissere and Marie Boscardin." The accused claimed that upon the record there was no basis, in the evidence or in the finding, for the reference in the excerpts from the charge, of a claimed mistake of Sissere for Tony, and his having been killed as a result of such mistaken identity. Paragraph 132 of the

finding fails to say specifically that the State offered evidence to prove and claimed to have proved that the accused went to the house (of Tony) with the intent to kill Tony but mistook Sissere for Tony and through such mistake killed Sissere. The accused in preparing their appeal evidently deemed that paragraph 132 did not amount to such a finding, otherwise they would have sought to have it corrected under General Statutes, § 5829. As it might be claimed that the proper interpretation of paragraph 132 would include the finding of mistaken identity, we deem that, since the whole of the evidence is in the record at the appellant's request, we may properly examine the evidence to determine the proper interpretation of paragraph 132 of the finding. *Friedler* v. *Hekeler,* 96 Conn. 29, 34, 112 Atl. 651. An examination of the evidence discloses that none was presented which tended to prove that the accused mistook Sissere for Tony, and through such mistake killed him. From the evidence there was no basis for such an inference, and no basis for even a reasonable conjecture that such a mistake of identity was made. Paragraph 132 of the finding should not, therefore, be construed to involve a finding that evidence was presented tending to prove such mistaken identity. In the absence of such a finding there was no support for the portions of the charge set forth above relating to mistaken identity, and they were erroneously given.

The accused allege as a ground of appeal: "3. That the court erred in denying the defendant's motion for a new trial upon the ground that the verdict rendered in said cause was not arrived at in accordance with the evidence, but was the result of prejudice and arrived at with a total disregard of the rules and laws governing the rights of the accused in a criminal trial." We said, in *State* v. *Buxton,* 79 Conn. 477, 480, 65 Atl. 957:

"A verdict will be set aside 'only when manifest injustice has been done by the verdict, and the wrong is so plain and palpable as clearly to denote that some mistake has been made by the jury in the application of legal principles, or as to justify the suspicion that they, or some of them, were influenced by corruption, prejudice, or partiality.'" An examination of the finding and the evidence does not disclose that manifest injustice has been done and that the wrong is plain and palpable, in so far as the question of the evidence being sufficient to support the verdict is concerned. There is, however, reasonable ground to believe that the accused did not secure a fair and impartial trial, because matters highly prejudicial to them were laid before the jury under the claim of the State that it intended to offer evidence to prove that Sissere was killed because mistaken for Tony Boscardin, against whom the accused were at enmity, when in fact there was no evidence in the possession of the State and offered, which tended to prove that the killing of Sissere took place because he was mistaken for Tony Boscardin. The State in its opening address to the jury and in statements made to the court in the absence of the jury, as to the facts which it intended to offer evidence to prove, stated, in effect, that it would offer evidence tending to prove that the accused were at enmity with Tony Boscardin at whose home John Sissere was killed in August, 1921, and desired and intended to be revenged upon him, and that this enmity and desire for revenge arose from the fact that the accused were implicated as principals in the stealing of goods from certain railway cars in Canaan in July, 1920, and had been arrested therefor, and that the accused believed that Tony Boscardin was instrumental in fastening that charge upon them, and that they went to the home of Tony in Canaan in August, 1921, and killed John Sissere there because

they mistook him for Tony Boscardin. In pursuance of these claims of the State Attorney so made, evidence was admitted which tended most strongly to prove that the accused were guilty participants in the criminal breaking and entering of railway cars at Barnes' Crossing in 1920, and that they believed that Tony Boscardin had been instrumental in their arrest for participation in such crime. It was, however, a further essential fact necessary to be proved in order to make the animosity of the accused toward Tony Boscardin a relevant fact as tending to prove the guilt of the accused of the killing of John Sissere, that, at the time of the killing, John Sissere was believed by them to be Tony Boscardin, and therefore was killed. As stated above, there was no evidence offered tending to prove that John Sissere was mistaken for Tony Boscardin, and under the evidence produced no basis existed even for a reasonable conjecture that such mistake was made. Under this claim of the State as to the facts it intended to prove, the essential fact of the mistake of identity, upon which the whole claim rested, utterly failed to be supported by any evidence. Yet, under this claim, details of the stealing from cars in July, 1920, and the connection of the accused with that crime were gone into before the jury, which it is reasonably probable convinced the jury that the accused were criminals who had been engaged in serious crimes in Litchfield county. The effect upon a jury of such a belief is inevitably prejudicial. We said, in effect, in *State* v. *Ferrone*, 96 Conn. 160, 168, 113 Atl. 452, that where prejudicial matter has been called to the attention of the jury, there are situations where it is reasonably certain that even instructions by the court to totally disregard such matter, could not and would not be effective to remove the prejudice necessarily aroused by it. The inevitable effect of such a state of mind

of the jury upon the verdict has been set forth by us in *State* v. *Ferrone*, 96 Conn. 160, 173, 113 Atl. 452. A fair trial of the accused was thereafter obviously impossible. When this situation appeared the court might well have declared a mistrial, because of the highly prejudicial character of the futile evidence presented in support of the claim that Sissere was killed because mistaken for Tony Boscardin.

During the course of the trial the court stated to the attorney for the State that it would exclude a line of examination that the State had entered upon. The State thereupon claimed the right or privilege to pursue this line of examination before the jury, by asking a series of questions and, upon their exclusion, taking an exception thereto in order that it might secure a ruling upon the admissibility of such matter in this court, upon an appeal or on a bill of exceptions. The trial court permitted the State to pursue such course. The questions thus presented before the jury were offered as tending to prove a motive on the part of the accused for killing Tony Boscardin; they also tended, by their terms, to show that the accused were involved in the serious crime of stealing from railway cars alluded to above. To this course of procedure the accused duly objected and excepted.

While it is true that the State was entitled to have its offers of proof presented and ruled upon by the court in such a situation, in order to lay a basis for an appeal or bill of exceptions, it was manifestly improper to secure that result by detailing a series of prejudicial facts in questions propounded to a witness before the jury. Under such circumstances, the State, when it learned that the court would exclude a line of inquiry, should have prepared a series of written interrogatories, or a written general statement of the facts that it desired to prove by a witness or witnesses, and in the ab-

sence of the jury presented it to the court in presence of counsel for the accused, and upon their objection securing a ruling from the court, taken exception thereto, and moved for the insertion of these proceedings in the record of the trial. The State and the court were in error in proceeding otherwise than as above outlined.

In view of the finding of error in the charge and the proceedings in relation to the fundamental complaint of the accused as to the faulty presentation to the jury of prejudicial matter in an attempt to sustain a claim as to the facts that proved untenable, to wit, that Sissere was killed because of mistaken identity, it is not desirable or necessary to consider the many other grounds of error claimed which are connected for the most part with evidence tending to prove the relations of the accused with Tony under such claim of mistaken identity. This claim the State utterly failed to prove, and on the record had no reasonable ground to believe that it could prove.

The foregoing discussion indicates, also, that the bill of exceptions of the State to the rulings of the court is not well taken.

There is error and a new trial is ordered.

In this opinion the other judges concurred.