STATE OF CONNECTICUT *v.* JAMES McLAUGHLIN ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued November 9—decided December 14, 1939.

*Louis Feinmark*, with whom was *Salvatore P. Gennario*, for the appellants (defendants).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (the state).

BROWN, J. The state offered evidence and claimed to have proved that these three accused had agreed together to hold up the night watchman on the dock of the Thames River Line in Bridgeport; that pursuant thereto they met as prearranged with Kenneth Smith, who was familiar with the location and knew that on that night there was a valuable cargo of tobacco and cigarettes there; that these four and two other unidentified men shortly after midnight on June 24, 1938, proceeded to the vicinity in two automobiles; that there, Smith and the two strangers, one of whom carried a gun, entered the dock to overpower the watchman; that the latter effectively resisted and the three fled to the waiting automobiles and were driven rapidly away to the garage of Alex Gordon, who had agreed to provide a truck to transport the tobacco and cigarettes; and that they told him they would have to wait until later and asked him to hide the gun, which he did. The defendants did not dispute that an attempted hold-up of the dock watchman occurred, but the defendants McLaughlin and Scattareggia claimed that they were not in Bridgeport that night but were in New York City, and that they were the victims of mistaken identity, and the defendant Viola, while he admitted driving Smith, a self-confessed participant in the crime, to a point near the scene, claimed he had done so innocently without either any guilty knowledge or intent of participating in the crime. The jury found each defendant guilty as charged of attempting to rob with violence the watchman Ladd on June 20, 1938, in Bridgeport. The defendants assign error in the court's denial of a motion for a

continuance, in improper argument by the state's attorney, in rulings upon evidence, and in the court's charge to the jury.

At the conclusion of the testimony presented by the defense, an hour and a half prior to the usual time for adjournment for the day, defense counsel moved for a continuance for one day to permit offering as a witness the defendant McLaughlin's wife, who was stated to have been with her husband at a dinner he claimed to have attended on the night of the robbery, concerning which there had been some testimony. She had been injured a week before by a fall, and though she knew this trial was in progress and that defense witnesses would be heard on that day, arranged to have X-ray pictures taken that day. There was no evidence that these could not have been taken at a later date or that she was incapacitated. The state's attorney objected to the postponement for this reason, and the court refused to grant it. The defense rested without having offered her testimony. It is claimed that the court erred in this ruling. Upon the above facts, particularly in the absence of any finding that Mrs. McLaughlin would probably be present on the following day if the continuance were granted, the court was within its legal discretion in denying the motion. *Gaul* v. *Baker*, 108 Conn. 173, 179, 143 Atl. 51; *Allen* v. *Chase*, 81 Conn. 474, 477, 71 Atl. 367; 6 R. C. L. 544.

It is also alleged that the court erred in allowing the state's attorney, in his closing argument, to urge upon the jury the failure of McLaughlin's wife to appear and testify that he was in Brooklyn with her on the night of the attempted robbery as strong reason for believing his story untrue, and in charging that "if there was evidence known only to one side, and in the control of that side, and that evidence was not offered," that was a fact to be considered by the jury

"in connection with the weight and credibility to be attached to all of the evidence." These claims are predicated solely upon the ground that the facts above recited relating to the requested continuance existed. That the court's ruling upon the continuance was correct is determinative of these further claims. The propriety of the state's attorney's argument and the correctness of the court's charge upon this point must be tested, not by the contention that if given another day McLaughlin might have produced his wife to furnish the missing evidence, but by the evidence properly before the jury as determined by the lawful rulings of the court. That the application of the instruction complained of was not restricted by the court to the case of McLaughlin alone constituted no error, for it does not appear from the record that it related only to the case of one defendant.

Kenneth J. Smith testified on direct for the state that since June 20, 1938, he had been in jail as a prisoner on the charge of attempted robbery, and that he was testifying freely with the knowledge of his counsel, and that he had been neither threatened nor promised anything by the state's attorney, either directly or indirectly in connection with his testimony. The defendants claim that the court erred in permitting this evidence to come in prior to any attack by them upon the credibility of the witness. The questions were admissible to bring to the attention of the jury at the very beginning of his testimony the interest which the witness had in the outcome of the case. It is customary practice at the beginning of the examination of a witness to bring out facts to show his relation to or interest in the controversy, and to do so tends to aid the jury in giving proper credit to him. Such a practice is rather to be commended than condemned.

In argument defendants' counsel, referring to the testimony of Smith and of Gordon, stated that they were influenced by a desire to avoid the consequences of their own acts and had testified as they had because they felt their testimony would help to this end, but that he did not believe the state's attorney had either directly or indirectly brought about this testimony or taken part in causing this belief to arise in their minds. In response, the state's attorney told the jury that the defendants' argument would leave the inference that these witnesses were testifying falsely with the expectation of some reward from the state, and that to disregard their testimony would be to imply a belief that the state was giving some inducement to give false testimony. The defendants contend that inasmuch as their counsel had made express disavowal of any belief on his part of such participation by the state's attorney, the court erred in overruling their objection to his argument. Had there been no disavowal, the argument could not be held improper in response to that advanced by the defendants, nor can we say upon this record that the force of the implication which the defendants' argument would naturally suggest to the jury was so completely eradicated from their mind by the ensuing disavowal as to render the court's ruling erroneous.

During the testimony of the defendant Scattareggia in his own behalf and as a witness for the other defendants, the following occurred on his direct examination: "Q. You have had some trouble in the past with the law, that is correct, isn't it? A. Yes. Q. And there were and have been a picture of you in the New York files, is that correct? A. Yes, sir." Subsequently on cross-examination after he had reaffirmed his first answer above, this inquiry was made of him by the state's attorney: "Q. Then I will ask you to tell the

jury what trouble you have had with the law." Over objection, this and a series of similar questions were allowed by the court, eliciting that this defendant since 1927 had been arrested in various cities six different times on criminal charges, upon one of which he was convicted of stealing an automobile. In the absence of any finding, as provided in § 359 of the Practice Book, bearing on its relevancy or materiality, the question first above quoted must be construed as a general unrestricted inquiry concerning trouble which the witness had had in the past with the law. The natural and ordinary purpose and import of such an inquiry would be to give credit to the witness by making him appear frank and open in his testimony. It was therefore the proper function of cross-examination, by the question which the state's attorney asked, to overcome that impression by showing that the witness was minimizing his difficulties with the law, and thus to affect the credit to be accorded his testimony. The court properly allowed these questions, and by cautioning the jury against concluding from this evidence of this accused's prior difficulties with the law or even conviction of a crime, that he was guilty of the crime here charged, and that this evidence did not constitute evidence of a conviction which as such they could consider as affecting his credibility, the court further safeguarded the defendant against prejudice from its admission.

The defendants claim that the court erred in charging the jury as follows: "It is your duty not only to observe the witness upon the stand, to listen carefully to what the witness says, but to observe the witness in and about the courtroom, because sometimes when you observe a witness in some other part of the courtroom, whether it is the accused or some other witness, and you are also listening to the evidence that comes from

the witness box, you are able at times to detect certain reactions when testimony comes in, and in that way sometimes you are enabled to draw inferences which might otherwise be unavailable to you." Of a trial to the court we have said: "It is the peculiar province of the trial court to observe the demeanor of the parties and their witnesses and to draw inferences therefrom as to the motives underlying their testimony and conduct. Findings based upon these observations in the courtroom are in the same category as findings based upon a view of the premises or property. Such evidence is as properly to be considered by the court in rendering its decision or making its findings as if presented by the lips of witnesses." *Dadio* v. *Dadio,* 123 Conn. 88, 92, 192 Atl. 557. In a case tried to the jury the same holds true of them as triers of the questions of fact. The above statement in our opinion in the *Dadio* case, however, is not authority for the broad rule laid down by the court in its charge quoted, since in so far as the record in that case indicates, the only reactions there under consideration were those observed while the persons in question were actually upon the witness stand. In a case where a demonstration of a physical injury suffered by a child too young to be sworn had been made before the jury, and was carried to the point of using the child as a witness to prove the truth of a material and disputed fact by inarticulate muscular contractions instead of by words, we held that this could only be permissible under the sanction of the oath administered to the doctor conducting the demonstration. *Friedler* v. *Hekeler,* 96 Conn. 29, 32, 112 Atl. 651. In accord with the above principles, the trier's right to take into account its observation of the demeanor of witnesses is limited to the observation of such genuine and spontaneous reactions by them in the courtroom as bear upon the

credibility to be accorded to their testimony given under oath. In so far as the court's instruction went beyond the limits laid down by this rule it was erroneous. However, since the record does not show to what the court referred by the words complained of, we cannot say that the jury were led by the charge to consider anything beyond the proper limits of their right to observe the witnesses while not on the witness stand. We cannot hold therefore that it constituted prejudicial error. The remaining assignments of error are without merit and call for no discussion.

There is no error.

In this opinion the other judges concurred.