STATE OF CONNECTICUT *v.* WILLIAM J. LORAIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 14—decided November 23, 1954

*James D. Cosgrove,* public defender, for the appellant (defendant).

*Albert S. Bill,* state's attorney, with whom, on the brief, was *Douglass B. Wright,* assistant state's attorney, for the appellee (state).

WYNNE, J.   The defendant was convicted of murder in the first degree.  The indictment set forth that the murder was done in attempting to perpetrate a robbery upon the person of George Zgierski. On his appeal to this court, the defendant in his assignment of errors attacks the finding in several particulars.  These attacks have no merit.  Included also are assignments as to the admission of evidence and exhibits.  These have to do with the claim that a confession obtained while the defendant was in the custody of the police in Rhode Island was not volun-

tary. Other confessions, subsequently made, could only, it is claimed, have had their inception in the first. The errors assigned on this aspect of the case, while set forth in detail, raise the one fundamental question whether the defendant's rights were violated. This was pressed in brief and argument as a complete entity. The answer to it is determinative of the appeal, because on the basis of the confessions the jury's verdict was amply supported and the motion to set aside the verdict was properly denied.

The defendant did not take the stand except, in the absence of the jury, in the course of a preliminary hearing concerned with the admissibility of the entire line of testimony under attack. The conviction of the defendant rests, undoubtedly, upon a confession made by him in Rhode Island and subsequent ones made to police officers in Connecticut. It is the defendant's claim that his first statement was not voluntary in the legal sense but was made as a result of a promise by or a bargain with the chief of police of Providence, Rhode Island, and was vitiated by that circumstance. It is further argued that the later confessions in Connecticut were so inextricably connected with the first that the admission of any, or all, of them was a violation of the defendant's rights.

We shall first consider the denial of the motion to set aside the verdict. With the claimed confessions and the exhibits before the jury, the following facts reasonably could have been found: On August 12, 1952, the defendant and one John Petetabella came to Hartford by bus from Providence. The defendant had a gun loaded with eight bullets in the clip and one in the chamber. Shortly after 9:30 in the evening of the day in question, the defendant and Petetabella accosted George Zgierski, who was driving his auto-

mobile in a westerly direction on Park Street in Hartford, and requested a ride. Zgierski acquiesced, and the two men entered the automobile. Shortly thereafter, when Zgierski announced that he was not going much farther, the defendant placed his gun against Zgierski and ordered him to stop the car. The defendant then forced Zgierski at gun point to climb into the back seat with him, and Petetabella took the wheel and continued to drive. First asking Zgierski if he had any money, the defendant took from him his motor vehicle license and registration. In Wethersfield, while the car was still traveling, Zgierski made an attempt to grab the gun held by the defendant. The defendant then shot him, five times in all. The defendant and Petetabella drove to an isolated spot, dragged the lifeless body of Zgierski from the car and dumped it in the weeds near a brook within a few feet of Deming Road in Berlin. The defendant had first gone through the pockets of Zgierski, and Petetabella had taken his wrist watch. The gun from which the fatal shots were fired was shown to have been in the possession of the defendant just before his arrest. Blood found on the back seat of Zgierski's car was human blood of the same classification as Zgierski's. On these facts the court was fully justified in denying the motion to set aside the verdict.

The facts found with reference to the admission of the confessions, with such corrections as are warranted, can be stated in summary as follows: On August 20, 1952, Captain Mulcahy of the Connecticut state police and a Providence police sergeant found the defendant at a boarding house in Providence, in the company of his divorced wife. Both were taken in custody to the police station. For a period of about an hour and a half directly following this,

Captain Mulcahy was not present. During this time the defendant was questioned by Chief Stone of the Providence police department and other Rhode Island police officers as to the whereabouts of Petetabella and concerning a crime which had been committed in Providence. In the course of this questioning, the defendant asked the police to let his ex-wife go. He was told by Chief Stone that she would be released if it appeared that she was not involved in anything. When Captain Mulcahy returned to the place where the defendant was being questioned, he and some Providence police officers took the defendant in an automobile and drove to the front of the Pawtucket police station. While sitting in the car, the defendant made the statement that on August 12 (the date of the murder) he had been in Connecticut. Mulcahy then made it known that he was a Connecticut police officer, and the defendant proceeded to tell of the killing of Zgierski in the detail here recited. Later, the party returned to Providence; there the defendant repeated his story and it was recorded on a tape recorder. Subsequently, in Connecticut, the defendant made further statements concerning the murder and testified before the coroner for Hartford County.

It is to the admission in evidence of all these confessions, statements and testimony that the defendant objects on the ground that they were improperly obtained. It is argued that the first statement was not voluntary but had been induced by what was taken to be a promise by Chief Stone made during the interrogation of the defendant in the absence of Mulcahy. It is further argued that the defendant did not know that the statement he thereafter made to Mulcahy was being recorded. The defendant claims that the state should have produced Chief

Stone before the jury to testify on what had occurred between him and the defendant prior to the time the defendant related his incriminating story to Captain Mulcahy.

The record discloses that the court conducted a preliminary inquiry in the absence of the jury concerning all of the circumstances attending the defendant's making of the recorded statement, which he sought strenuously to have excluded from evidence before the jury. The court ruled that the statement was voluntary, that it was not made under threat or duress or on any promise or expectation of favor of any kind. In this ruling and similar rulings on other proffered evidence, as well as in the state's failure to produce Chief Stone at the trial so that he could be questioned concerning all that went on before the statement was given to Captain Mulcahy, is found the real basis of the defendant's claim that his rights were violated. Chief Stone was a witness at the preliminary hearing. It is claimed that the evidence of the state at the preliminary hearing showed that the defendant, while under arrest in Rhode Island, was offered some inducement that prompted him to make his statement there and that this inducement entered into and prompted the statement made by him to Captain Mulcahy that was recorded and later given to the jury at his trial. There is no basis for such a claim, and, there being no infirmity as to the statement, the other so-called confessions made afterwards were in no way impaired and rendered inadmissible by the infirmity of the one under attack. The rule is well established that the issue whether a confession was freely and fairly obtained is one of fact for the legal discretion of the trial court. Its decision will not be disturbed except for abuse of

discretion. *State* v. *DiBattista,* 110 Conn. 549, 562, 148 A. 664.

The mere fact that some promise was made by one officer does not necessarily render inadmissible a confession made to another. *State* v. *Willis,* 71 Conn. 293, 314, 41 A. 820. While the burden of proving prima facie that a confession has been fairly obtained is on the state (*State* v. *Castelli,* 92 Conn. 58, 67, 101 A. 476), the decision whether that burden is met in a preliminary hearing on the admissibility of the evidence rests in the sound legal discretion of the court. *State* v. *DiBattista,* supra. Under our law, confessions are admissible if they are fairly obtained under circumstances which would not tend naturally to induce an accused to speak falsely. *State* v. *Guastamachio,* 137 Conn. 179, 182, 75 A.2d 429. In the present case, the only substantial question raised is whether the various confessions were unfairly obtained by reason of the fact that Chief Stone had made a so-called promise to the defendant while investigating a crime that must have been known by the defendant to have been unrelated to the murder in Connecticut. The trial court was warranted in finding that there was no such promise as would taint the original confession to Mulcahy with a probability of untruth. It follows that, a preliminary hearing having been had, it was not incumbent upon the state to produce Chief Stone before the jury: The confessions were properly admitted.

As to the point whether the defendant was advised, or should have been advised, that his statement was being recorded, the only question is whether the recording was a faithful one. *State* v. *Perkins,* 355 Mo. 851, 858, 859, 198 S.W.2d 704. The test for the admission into evidence of sound recordings is the laying of a proper foundation to assure the au-

thenticity of the recordings. Note, 168 A.L.R. 927. Speak-o-phone discs were held to be properly admitted in *Kilpatrick* v. *Kilpatrick*, 123 Conn. 218, 225, 193 A. 765. In the present case it appears that the trial court was satisfied as to the authenticity of the recordings.

Regarding the claim that the law of Rhode Island and not that of Connecticut controls the question whether the first statement by the defendant was free and voluntary, it does not appear that there is any difference in the law of the two states on the point involved. However, it is the rule that the admissibility of evidence relates to judicial procedure and is determined by the law of the forum. *Fisk's Appeal*, 81 Conn. 433, 436, 71 A. 559; 31 C.J.S. 509, § 5; 1 Wigmore, Evidence (3d Ed.) p. 159, § 5.

There is no error.

In this opinion the other judges concurred.