STATE OF CONNECTICUT *v.* HAROLD D. ROGERS

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

168

Argued December 9, 1955—decided January 27, 1956

*Thomas R. Robinson,* public defender, with whom was *Lawrence M. Dooley,* special assistant to the public defender, for the appellant (defendant).

*Abraham S. Ullman,* state's attorney, with whom, on the brief, was *Arthur T. Gorman,* assistant state's attorney, for the appellee (state).

WYNNE, J. The defendant has appealed, after a trial to a jury, from his conviction on a charge of murder in the first degree. He was charged under § 8350 of the General Statutes with the shooting and killing of Dorothy Kennedy in the perpetration of a robbery of the package store operated by her and her husband, Joseph Kennedy, in West Haven. No recommendation for mercy having been made by the jury, the defendant was sentenced to the punishment of death. He has assigned error in sixteen particulars having to do with his trial. In brief and argument his counsel have grouped them in four categories. As thus presented, the issues concern (1) the court's refusal to grant a motion for change of venue, (2) certain rulings of the court as to the legality of

the defendant's restraint on the occasions of his statements to the police and the coroner, the rulings being later reflected in the charge, (3) the charge, which in terms discussed an attempted robbery although the indictment set forth only a charge of murder in perpetrating a robbery, and (4) several rulings pertaining to points of evidence. The defendant also assigns error in the finding of specific facts by the court and the court's conclusions, drawn from facts found, bearing upon the admissibility of statements made by the defendant to the police and to the coroner concerning the crime with which he was charged. These facts and conclusions have ample support in the evidence, and the finding is not subject to correction.

The state claimed to have proved the following facts: Dorothy Kennedy was shot and killed on November 21, 1953, in the West Shore Package Store at 143 Ocean Avenue in West Haven. She and her husband owned and operated the store. She was alone in the store at 7:30 p.m. on the day in question, and within a space of minutes thereafter the tragedy had taken place and the cash register was rifled, about $60 being taken. On January 9, 1954, the New Haven police were seeking to arrest the defendant on charges of attempted robbery, breaking and entering and theft committed that day at the Travelers Hotel in New Haven. That evening, officers located the defendant sitting in his car on Oak Street in New Haven. He had in his possession a .38 caliber Smith and Wesson revolver, which, it later appeared, he had stolen from his nephew before the shooting on November 21, 1953. He was arrested and presented in the City Court of New Haven on January 13, 1954, where he waived examination through private counsel and

was bound over to the April session of the Superior Court and lodged in the New Haven County jail under a duly issued mittimus. On January 30, 1954, the revolver which had been taken from him was turned over to the state police for testing, and it was found to have fired the bullets which killed Mrs. Kennedy. Thereafter, the defendant made statements to the police and to the coroner in which he admitted that he had killed Mrs. Kennedy. These statements were free and voluntary. Their truth was not disputed by any witness at the trial.

The defendant claimed to have proved the following: On January 30, 1954, in the evening, while he was still a bound-over prisoner at the jail, he was brought to the state's attorney's office and questioned by the police. His request to see his counsel was denied. When he disclaimed any knowledge of the shooting of Mrs. Kennedy, he was told that unless he confessed his wife would be brought down to police headquarters for questioning and their foster children would be sent to the children's building. He then gave a statement to the police which was offered and received in evidence. The following morning, January 31, the coroner by telephone instructed the sheriff to permit no one to see the defendant. Thereafter, his private counsel sought to see him, but opportunity was denied by the state's attorney. At noon on January 31, the defendant was taken to the coroner's office, was questioned and gave a statement which was later offered and admitted in evidence. The statements made by the defendant were so tainted by lack of due process of law as to be involuntary.

The defendant made two motions for a change of venue. Both were denied. The basis of the motions was the widespread publicity given the killing of

Mrs. Kennedy while she was alone in the package store, and, later, the publicity attending the defendant's statements to the police and to the coroner. Section 8794 of the General Statutes provides that the judge holding any term of the Superior Court may, upon motion, order any criminal case pending in that court to be transferred to the Superior Court in any other county. We have had occasion to construe this statute and have held that the court exercises a discretion as to whether the motion should be granted. *State* v. *Luria,* 100 Conn. 207, 209, 123 A. 378. The ruling of the court is reviewable to determine whether this discretion has been abused. *State* v. *Rocco,* 109 Conn. 571, 572, 145 A. 47. The burden of showing that a fair and impartial trial could not be had in the county of origin is on the defendant. *State* v. *Chapman,* 103 Conn. 453, 470, 130 A. 899. To sustain this burden, he must show more than that the crime with which he is charged received considerable publicity. He must demonstrate that the publicity was necessarily prejudicial to him and prevented his being accorded a fair and impartial trial. *State* v. *Rocco,* supra; *State* v. *Leopold,* 110 Conn. 55, 58, 147 A. 118; *State* v. *Chapman,* supra. There is no finding of facts showing that the present defendant did not get a fair and impartial trial because of the publicity concerning the crime with which he was charged and the statements which he gave to the police and to the coroner. The court did not abuse its discretion in denying the motions for change of venue.

The second group of errors concerns the admission of the statements made by the defendant to the police and to the coroner, his so-called confessions, and the court's charge to the jury with respect to their consideration of them. As to the former, the

claim is that the methods used in securing the statements were so tainted with the denial of due process of law to the defendant as to render them involuntary and therefore inadmissible. The test of the admissibility of a confession is whether it was voluntary. *State* v. *Palko,* 121 Conn. 669, 680, 186 A. 657, and authorities cited. The issue is one of fact for the trial court to decide in the exercise of a legal discretion, and its decision will not be disturbed except for the abuse of that discretion. *State* v. *Lorain,* 141 Conn. 694, 699, 109 A.2d 504. The defendant complains that he had been committed to the county jail and that he was brought to the state's attorney's office, where he made a statement to the police, and, later, before the coroner, where he made a second statement, illegally, because the officers had no legal authorization to take him out of the jail. He also protests that he was held incommunicado and denied legal counsel before these statements were made. If we concede that this was all true and that such conduct was unlawful, it does not, standing alone, render the defendant's confessions inadmissible. The question is whether, under these and other circumstances of the case, that conduct induced the defendant to confess falsely that he had committed the crime being investigated. Unless it did, it cannot be said that its illegality vitiated his confessions. *State* v. *Guastamachio,* 137 Conn. 179, 183, 75 A.2d 429; *State* v. *Zukauskas,* 132 Conn. 450, 459, 45 A.2d 289.

The defendant had been lodged in the county jail on a mittimus issued in the City Court of New Haven when he was bound over to the Superior Court to await charges arising out of his arrest on January 9, 1954, in connection with an attempted robbery at the Travelers Hotel. Proper court authorization should have been secured before the defendant was

removed from the jail. There is nothing about his illegal removal, however, to demonstrate that he was thereby forced to make an untrue statement. The same can be said concerning the refusal to admit counsel to see the defendant on the morning of January 31 before he was brought before the coroner. The defendant had not requested that his attorney, Chester T. Corse, be called to the jail, and it does not appear that he knew that Corse had been refused admission to see him. The situation is essentially like that presented in *State* v. *Buteau,* 136 Conn. 113, 118-120, 68 A.2d 681, wherein we ruled that the confessions were admissible. The further fact that one of the officers interrogating the defendant pretended, in his presence, to place a telephone call directing that the defendant's wife be brought to police headquarters and their foster children be taken to the children's building did not in and of itself make the defendant's statements to the police involuntary. Here again, the question for the court to decide was whether this conduct induced the defendant to make an involuntary and hence untrue statement. *State* v. *Malm,* 142 Conn. 113, 121, 111 A.2d 685. The court did not abuse its discretion in admitting the defendant's statements in evidence for consideration by the jury.

As to the claimed errors in the charge as given and in the refusal to charge as requested, the essential claim is that the court should have specifically charged the jury that the removal of the defendant from the county jail to the state's attorney's office and to the hearing before the coroner and the refusal to permit counsel to see him at the jail were illegal and that the jury should consider these facts in deciding whether the confessions were voluntary or should be disregarded as involuntary.

The court cautioned the jury that the admission of the confessions meant no more than that the circumstances under which they were made were such that the jury should have them for consideration and that the ruling admitting them was not to be taken by the jury as giving them any more weight than the jury should decide to give them. The court told the jury that no confession or admission of an accused is admissible in evidence unless it was made freely and voluntarily and not under the influence of promises or threats, and that the employment of some artifice or deception to procure a confession does not render it inadmissible unless the artifice or deception was calculated to produce an untrue statement. The court then said: "[Y]ou will give these statements or confessions that you have before you whatever weight you consider they are entitled to, and in determining what weight you consider they are entitled to you consider all of the circumstances under which they were procured so far as these circumstances have been made known to you by the evidence. They include, among other things, the fact that the accused was in custody and under the control of the officers at the time; that he was kept in this status that has been described as incommunicado, and the other elements in the evidence before you; the manner in which he was taken from the jail to the State's Attorney's office and to the Coroner's office and what transpired on each of those occasions; the facts relating to what was said to him about his desire for counsel and everything else that you recall as being disclosed to you by the evidence, as to the circumstances under which the confessions and statements were made. All of the circumstances leading up to the making of these confessions, I say to you, are proper for you to consider in determin-

ing the weight that you are to give them. I want to repeat this. It is not wrongful for a police officer to question an accused person about an alleged crime. A confession made to a police officer is not inadmissible for that reason alone and a confession made by artifice, by trick or design, is not inadmissible for any one of those reasons alone. A confession made when a person is illegally detained is not inadmissible for that reason alone. The rules which surround the use of a confession are designed and put into operation because of the desire expressed in the law that the confession, if used, be probably a true confession. . . . It is for you to determine what weight you are to give to them, and in that connection, as I have said, you should consider the circumstances under which they were made as the circumstances appear in evidence before you."

The question that the jury had to decide in this connection was whether the impact of the officers' conduct on the mind of the defendant was such as was likely to result in an involuntary or untrue statement. This impact would be the same whether the conduct was lawful or unlawful. Consequently, it would not have assisted the jury in their decision of the question to have been told that the conduct was unlawful. Under the circumstances of this case the charge given was correct and adequate for the guidance of the jury.

It is a play upon words to argue that the defendant was prejudiced by the court's charge discussing an attempt as well as a completed perpetration of a robbery. Whatever was done on the evening of November 21, 1953, involved the robbery of Mrs. Kennedy who, with her husband, owned the money in the cash register. Whether she was killed before the money was taken or whether she was killed

moments thereafter, we fail to see that the court was in any way enlarging the letter of the indictment. An attempt at robbery is of the same significance as an actual robbery, if in either instance a life is taken. A charge of attempt is included within the charge of a completed offense. Both crimes are included in the definition of murder in the first degree contained in the statute, § 8350, under which the defendant was charged. The indictment charges that the defendant "did in perpetrating a Robbery murder one Dorothy Kennedy by shooting her." The words of the statute "in perpetrating, or in attempting to perpetrate, any . . . robbery" mean a killing done at any time within a sequence of events directly connected with a robbery and the escape from the scene of it. Upon the facts of this case, it is inconsequential whether the particular crime in the perpetration of which the killing occurred was actually completed or failed and for that reason could be described technically as merely an attempt. 4 Warren, Homicide (Perm. Ed.) p. 94; *People* v. *Boss,* 210 Cal. 245, 251, 290 P. 881; *Conrad* v. *State,* 75 Ohio St. 52, 70, 78 N.E. 957; *Commonwealth* v. *Hough,* 358 Pa. 247, 250, 56 A.2d 84. Furthermore, the jury returned a verdict of guilty of murder in the first degree in perpetrating a robbery. This was consistent with the unchallenged claim of proof made by the state that the defendant took $60 from the cash register in the deceased's package store. The court's reference in its charge to an attempt to commit robbery manifestly did not affect the verdict.

The denial of the defendant's motion for a mistrial offers the only remaining question which requires discussion. It appears that Vera Evans, a witness called by the defendant, testified that she had known him for thirty-two years, that he had been hospi-

talized because of carbon monoxide poisoning in 1948, and that she had noticed a change in him after that hospitalization. On cross-examination, the state's attorney asked the witness if she was aware of the fact that the defendant had committed the crime of robbery before 1948. The defendant claims that the question was improper and brought to the attention of the jury a very damaging connotation. The question was excluded, and no answer was given. Aside from the fact that the question was proper cross-examination as bearing upon the witness' knowledge of the personality of the defendant within the period of her acquaintance with him, the court not only excluded it but clearly instructed the jury that they were not to be influenced by it in any way. *State* v. *McLaughlin,* 126 Conn. 257, 263, 10 A.2d 758. The motion for a mistrial was properly denied.

We have reviewed the several other rulings enumerated in the final grouping of errors. The defendant's exceptions to those rulings have no merit. See *State* v. *Donahue,* 141 Conn. 656, 667, 109 A.2d 364.

There is no error.

In this opinion INGLIS, C. J., BALDWIN and DALY, Js., concurred.

O'SULLIVAN, J. (dissenting). I am in accord with that part of the opinion which deals with the court's denial of the motions for a change of venue and for a mistrial. But I am in disagreement with the ultimate result reached by my colleagues because of the court's refusal to charge, as requested, concerning the so-called confessions.

The defendant had submitted certain requests in writing in order to meet the following factual situation, which the jury might reasonably have accepted

upon the evidence submitted to them: On January 9, 1954, that is, about six weeks after Mrs. Dorothy Kennedy had been shot and killed in West Haven, the defendant was arrested by the New Haven police on a charge of statutory burglary committed earlier that day at a local hotel. He immediately engaged counsel, who thereafter represented him during the time covered by the events of this narrative. On January 13, the defendant was presented to the City Court to answer to the charge of burglary. On the advice of counsel he waived examination, was bound over to the Superior Court and, in default of bail, was committed to the county jail by virtue of a mittimus properly issued by the City Court.

Beginning on January 30, the authorities investigating the death of Mrs. Kennedy indulged in a series of illegal acts affecting the defendant. These acts culminated in his giving the two alleged confessions. The way it came about was this: About noon on January 30, the police took the defendant from the county jail and brought him to the state's attorney's office. Upon arriving there, he was told for the first time that he was to be questioned about the death of Mrs. Kennedy. He immediately asked to see his lawyer. Not only was this request refused but he was thereafter subjected to a prolonged interrogation from approximately 1 p.m. until the early morning hours of the following day. Only after the police had threatened to take his sick wife into custody and to turn his and his wife's foster children over to the juvenile authorities, and had pretended to make two telephone calls to put that threat into effect, did the defendant reverse his previous persistent denials and involve himself in the killing of Mrs. Kennedy.

On the morning of January 31, after the defendant

had been returned to jail, the coroner for New Haven County ordered the jailer by telephone to hold him incommunicado and, above all else, not to let him see his lawyer, Chester T. Corse. Shortly after this order had been given, Corse arrived at the jail and asked to see the defendant. The high sheriff of the county, who happened to be there at the time, called the state's attorney and was told that under no circumstances was the defendant to be allowed to talk with Corse. About noon of the same day, police officers arrived at the jail and, over Corse's objection, were permitted to interrogate the defendant again. Later in the afternoon, he was taken from the jail and brought to the coroner's office, where he made further incriminating statements. The statements given to the police and to the coroner were reduced to writing, were signed by the defendant, and were introduced into evidence at the trial.

The defendant filed a written request to charge.[1] It seems to me that, in denying the request, the court committed harmful error. Indeed, with the death penalty involved, the court should have gone even further than the defendant asked it to go. For if the jury found the facts narrated above to be true, they should have been told that at least the confession to the coroner could not,

---

[1] The request read as follows: "In determining what weight you should give to the confessions of the accused, you must determine whether they were given voluntarily and if you find that they were in any respect involuntary you may disregard all or any part of them. In determining their voluntariness and the weight that you should give to them, you may take into account the following factors: (a) The transportation of the accused to the office of the State's Attorney on January 30, 1954, was illegal and improper. . . . (b) The transportation of the accused to the Coroner's hearing on January 31, 1954, was illegal and improper. . . . (f) It was illegal and improper to deny the accused access to counsel, if you find that he was so denied, on January 30 and 31, 1954."

as a matter of law, be deemed to be voluntary.

The removal of the defendant on January 30 and his detention for over twelve hours in the state's attorney's office were clearly illegal. So too were his removal from jail and his detention in the coroner's office on the following day. While the investigating authorities have the duty of attempting to solve crime and of bringing criminals to trial, that does not confer upon them the right to use unlawful measures to attain their end. See *State* v. *Marquardt*, 139 Conn. 1, 89 A.2d 219. Those who become suspect do not thereby become the chattels, so to speak, of the investigators. The illegal practices in the instance under discussion cannot be condoned, even though they may have conformed to a long-established custom of the county and were pursued in an effort to ascertain the murderer of Mrs. Kennedy. Until legal process, issuing from a proper source, superseded the mittimus under which the defendant was to be safely kept within the jail, the investigators had no legal right to bring him, as they did, before either the state's attorney or the coroner.

However, if the two removals of the defendant and the two detentions were the only illegal acts perpetrated on him, one might deplore them without necessarily challenging the voluntariness of the confessions that followed. But where we are met with orders barring an accused from conferring with his counsel, we reach what seems to me to be constitutional illegality. See *Stroble* v. *California*, 343 U.S. 181, 198, 72 S. Ct. 599, 96 L. Ed. 872. Such orders involve the denial of the due process guaranteed by the fourteenth amendment to the federal constitution. See *Pennsylvania ex rel. Herman* v. *Claudy*, 350 U.S. 116, 76 S. Ct. 223, 100 L. Ed. 126. The court should have granted the defendant's request

to charge and, going further, have instructed the jury that if they found that the coroner had, by an order to the jailer on January 31, barred the defendant from conferring with his counsel at reasonable times, the confession subsequently given to the coroner should be completely disregarded. No matter how evil an individual may be, he is entitled to insist that, if he is to be convicted, the verdict shall be reached upon proper and adequate instructions from the court.