UNITED STATES ex rel. Harold D. ROGERS

v.

George A. CUMMINGS, Warden of Connecticut State Prison

and

Frederick G. REINCKE, Adjutant General of the State of Connecticut, Acting Warden of Connecticut State Prison

and

Stuart E. TILLINGHAST, Deputy Warden, Connecticut State Prison.

Civ. No. 6294.

United States District Court
D. Connecticut.
Sept. 20, 1956.

Thomas R. Robinson, New Haven, Conn., Public Defender for New Haven County, for petitioner.

Abraham S. Ullman, New Haven, Conn., State's Atty. for New Haven County, for respondent.

J. JOSEPH SMITH, Chief Judge.

Relator, Harold D. Rogers, a negro with an 8th grade education, presently 48 years old, seeks relief by writ of habeas corpus from a judgment and sentence of death by the Superior Court for New Haven County on a charge of murder in the first degree in the perpetration of a robbery. The judgment was affirmed on appeal, State v. Rogers, 143 Conn. 167, 120 A.2d 409, certiorari denied 351 U.S. 952, 76 S.Ct. 850, 100 L. Ed. 1476.

Rogers is the brother of a New Haven policeman. Rogers was arrested in New Haven January 9, 1954 charged with attempted robbery of the Travelers Hotel on that date. He retained counsel, and on January 13, 1954 waived examination in New Haven City Court and was bound over for trial to the Superior Court, April Term. While he was lodged in New Haven County Jail, on the morning of January 30, 1954, ballistic tests on a gun

found in his possession at the time of his arrest determined that it had been used in the fatal shooting of Mrs. Kennedy in the holdup of a liquor store in West Haven on the evening of November 21, 1953. The gun had been stolen from his niece's house prior to the evening of November 21, 1953. On the order of the state's attorney he was removed from the jail without court order for questioning at the state's attorney's office. Until he confessed he was kept unavailable to his counsel. He claims that he was denied a request to see his counsel, which request the state's witnesses deny was made. That he made such a request seems most probable, and the Court finds that it was made. He was not warned of his right to say nothing or that what he said could be used against him. Questioned intermittently for some eight hours by the county detective, two New Haven and two West Haven police in relays, during which the gun was on the table before him, he steadfastly denied implication in the Kennedy shooting. He was handcuffed, but was allowed to smoke. He was given coffee and hamburg, one hand being released from the cuffs, which were then fastened to the chair arm, while he smoked and ate. He was taken to the men's room when he requested it. No physical violence or threats of physical violence were used. When the interrogators were unable to obtain any admission in the eight hour questioning, Captain Eagan of the New Haven police was called in. After questioning for some time, Capt. Eagan threatened to bring in for questioning Rogers' wife if Rogers did not confess. He threatened to send the two foster children of the Rogerses, who were state wards, to an institution meanwhile. Mrs. Rogers suffered from arthritis, but was able to attend the trial. Eagan made a pretended telephone call on a dead wire to hold a car and officers in readiness to get Mrs. Rogers and the children. He then gave Rogers an hour to make up his mind whether to confess. At the end of that time he took the phone to pretend to order Mrs. Rogers and the children brought in. At this point Rogers gave in and made a confession, completed at 1:00 a. m., 13 hours after the beginning of the questioning. He was then returned to the jail. The next morning, January 31, the coroner gave an oral order that Rogers be held incommunicado. His counsel called at the jail, but on orders of the state's attorney was denied access to him. Rogers was taken to the coroner's office where he was for the first time warned of his rights not to make a statement and to have counsel, but still fearing that the threat to take into custody his wife and children would be carried out if the original confession was repudiated, he repeated it for the coroner. One or two days thereafter the order that he be held incommunicado was rescinded. On his trial the confessions were admitted in evidence, the court finding on preliminary hearing in the absence of a jury that they were voluntary, and submitting to the jury the question of the weight to be given them, but refusing a requested instruction that the jury might disregard them in whole or in part if it found them involuntary. The confessions were the result of pressure overcoming Rogers' powers of resistance and were not voluntary on his part.

■■ The petitioner's state remedies are exhausted and his action will lie in this court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. Denial of certiorari to the Supreme Court of Errors on the conviction in the criminal case does not preclude this action, for it is neither res judicata nor an opinion on the merits, if no opinion is given. Brown v. Allen, supra, 344 U.S. at pages 489–497, 73 S.Ct. 397; Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948.

■ Ordinarily, determination of disputed issues of fact by the trial judge and jury are binding upon the Supreme Court in direct review of a state conviction, where there is a dispute as to whether certain alleged coercive acts actually occurred, or where different inferences may be drawn from admitted facts. Lyons v. Oklahoma, 322 U.S. 596, 602, 64 S.Ct. 1208, 88 L.Ed. 1481. On habeas

corpus, the federal court must make its own determination of the underlying facts on the issues presented to it. While the criminal trial court's findings may be persuasive, they are not binding and this court has the ultimate duty of determining the underlying facts and inferences properly to be drawn from them. Cranor v. Gonzales, 9 Cir., 226 F.2d 83, 90, certiorari denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816.

■ If the confessions were coerced, that is involuntary, it was a constitutional error to admit them into evidence on the question of Rogers' guilt. Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522; Leyra v. Denno, supra; Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183. The Supreme Court of Errors in this case appears to assume that admission of a coerced confession is not constitutional error unless the confession is shown to be untrue. This is not in accord with the federal constitutional rule which we must apply here. "Use of involuntary verbal confessions in State criminal trials is constitutionally obnoxious not only because of their unreliability. They are inadmissible under the Due Process Clause even though statements contained in them may be independently established as true. Coerced confessions offend the community's sense of fair play and decency." Rochin v. California, supra, 342 U.S. at page 173, 72 S.Ct. at page 210.

■ Denial of counsel in the preliminary proceedings is not in itself a fatal lack of due process, since defendant was represented by competent counsel on trial and appeal. Utah v. Sullivan, 10 Cir., 227 F.2d 511, 513. Deliberate concealment of an accused from his counsel for prolonged questioning is, however, a circumstance which may affect the voluntary or involuntary character of the confessions, including the second confession which was made to the coroner while the order not to allow counsel to see him still held, even though the coroner then expressed willingness to allow defendant to see counsel. Nor is the illegality of the movement of defendant from the jail for questioning sufficient in itself

to invalidate his later conviction, Stein v. New York, supra. The coroner's action in holding a suspect in a homicide case incommunicado is probably illegal, having as its basis solely the statutory authority for segregation of witnesses during an investigation. Only in the rare case where particular counsel is himself a prospective witness could such denial of access to counsel be called segregation from other witnesses. This illegality would in itself have no effect on the suspect's volition unless he had some awareness of it. Here, however, the accused knew that the identity of his counsel was known to the prosecuting officials. In determining whether a confession has been psychologically coerced, the court must weigh the circumstances of pressure against the power of resistance of the person confessing. Cranor v. Gonzales, supra, 226 F.2d at page 88. Rogers gave in to a threat which in itself separated from the surrounding circumstances, might not be likely to cause a confession to a capital crime. It was applied, however, after more than eight hours of questioning, at a place removed from the jail, by which time it must have been obvious to Rogers that the counsel he had engaged was not to be allowed to see him and advise him on the new charge of a capital offense. That charge was first made known to him after his removal from the jail that day. The state's treatment of Rogers as a chattel of the investigators (see dissenting opinion of O'Sullivan, J., State v. Rogers, 143 Conn. 167, 181, 120 A.2d 409) moved around regardless of law and denied access to counsel must have had a coercive effect. We may give it weight in conjunction with other facts even if we do not hold illegal treatment in itself necessarily productive in every case of a coerced confession violative of due process. When Rogers gave in to the threat to bring in his wife and children it must be held under all the circumstances here that he lacked sufficient mental freedom to make his confession voluntary. Its use in the trial to convict him is not consonant with the requirements of due process. The second confession the next day while still held incommuni-

cado, although pro forma at least advised of a right to counsel, is also of doubtful admissibility. In any case, since the first coerced confession was admitted in evidence, and it cannot be said from the record what weight was given it, the judgment of conviction is invalid. Stein v. New York, 346 U.S. 156, 191–192, 73 S.Ct. 1077; Cranor v. Gonzales, supra, 226 F.2d at page 90.

Rogers may be a thoroughly depraved individual, but his execution on a conviction based on confessions obtained under the circumstances outlined in this case may well establish a precedent endangering innocent men in the future. Constitutional safeguards would be weakened by a finding that confessions so obtained may be considered voluntary and in accord with present concepts of due process of law.

On the writ of habeas corpus heretofore issued, the judgment of conviction may be set aside. If appeal from the judgment herein is taken, relator may be held in the custody of respondents pending decision on appeal. If appeal is not taken relator may be held for retrial within a reasonable time of the charges against him. Form of judgment in accordance herewith may be submitted promptly by counsel for relator.